Ann E. McLAUGHLIN, Secretary of
Labor, Petitioner,

v.

A.B. CHANCE COMPANY; Occupation-
al Safety & Health Review
Commission, Respondents.

No. 87–3829.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 3, 1987.

Decided March 23, 1988.

Steven J. Mandel, for appellate Litigation
(George R. Salem, Sol. of Labor, Allen H.
Feldman, Associate Sol., for Sp. Appellate
and Supreme Court Litigation.

Ellen L. Beard, Atty., U.S. Dept. of La-
bor, Washington, D.C., on brief), for peti-
tioner.

William Thomas Weidle, Jr. (Frank L.
Pellegrini, A Professional Corp., St. Louis,
Mo., on brief), for respondents.

Before PHILLIPS, CHAPMAN and
WILKINSON, Circuit Judges.

CHAPMAN, Circuit Judge:

This is a petition for review of a decision
and order of the Occupational Safety and
Health Review Commission (Commission)
holding that a regulation, 29 C.F.R.
§ 1904.7(a), promulgated by the Secretary
of Labor (Secretary) under the authority of
the Occupational Safety and Health Act
(Act), 29 U.S.C. § 651, *et seq.,* violates the
Fourth Amendment to the extent that it
purports to authorize an inspection of re-
quired records without a warrant or a sub-
poena. The dispute arose during a visit by
an Occupational Safety and Health Admin-
istration (OSHA) compliance officer to a
plant operated by A.B. Chance Company in
Parkersburg, West Virginia, in response to
an employee health and safety complaint.
While at the plant the compliance officer
asked for production of OSHA forms No.
101 and 200. Form 200 is a log and sum-
mary of all recordable occupational injuries
or illnesses, and Form 101 is a supplemen-
tal record of such injuries and illnesses.
The compliance officer also requested per-
mission to see certain machinery that had
been cited in the complaint. Chance's des-
ignated representative permitted the com-
pliance officer to examine the machinery,

but refused to produce forms No. 101 and 200.

A week later, the compliance officer contacted Chance officials at the Parkersburg plant in an effort to examine forms No. 101 and 200, but he was advised that these forms would not be produced without a search warrant. On May 3, 1984, the compliance officer notified Chance of its violation of the Act, and regulations promulgated thereunder, particularly 29 C.F.R. § 1904.7(a), which provides that an employer shall provide, upon request, the records provided for in §§ 1904.2, 1904.4, and 1904.5 for inspection and copying by any representative of the Secretary of Labor for the purpose of carrying out the provisions of the Act, and by representatives of the Secretary of Health, Education, and Welfare during any investigation under § 20(b) of the Act, 29 U.S.C. § 669(b), or by any representative of a state accorded jurisdiction for occupational safety and health inspections or for statistical compilation under §§ 18 or 21 of the Act, 29 U.S.C. §§ 667, 670.

At no time did OSHA or its representative seek or obtain an inspection warrant or an administrative subpoena for the forms No. 101 and 200. The Secretary sought enforcement of its citation before the Occupational Safety and Health Review Commission. In January 1985 an administrative law judge (ALJ) found that Chance had no reasonable expectation of privacy in the OSHA forms No. 101 and 200, because these forms were maintained in accordance with OSHA regulations and were not general business records. He also ruled that as regulatorily required records, the forms were part of a group of items sufficiently limited in scope so that the production and examination of the forms would be considered a "reasonable" search for Fourth Amendment purposes.

In March 1987, upon discretionary review, the Commission reversed the ALJ and found that under the Fourth Amendment production of OSHA forms No. 101 and 200 may not be required without a warrant or a subpoena. The Commission relied upon its decision in *Secretary of Labor v. King's Island, Division of Taft Broadcasting Co.*, No. 82–1016 (OSHRC Mar. 18, 1987), in which it held that the warrantless inspection scheme provided in 29 C.F.R. § 1904.7(a) was not "a constitutionally adequate substitute for a warrant." It found the regulation invalid as applied to the present case, and the Secretary seeks review.

I

OSHA form No. 200 is required by 29 C.F.R. § 1904.2(a), which provides:

(a) Each employer shall, except as provided in paragraph (b) of this section, (1) maintain in each establishment a log and summary of all recordable occupational injuries and illnesses for that establishment; and (2) enter each recordable injury and illness on the log and summary as early as practicable but no later than 6 working days after receiving information that a recordable injury or illness has occurred. For this purpose form OSHA No. 200 or an equivalent which is as readable and comprehensible to a person not familiar with it shall be used. The log and summary shall be completed in the detail provided in the Form and instructions on form OSHA No. 200.

OSHA form No. 101 is required by 29 C.F.R. § 1904.4, which provides:

In addition to the log of occupational injuries and illnesses provided for under § 1904.2, each employer shall have available for inspection at each establishment within 6 working days after receiving information that a recordable case has occurred, a supplementary record for each occupational injury or illness for that establishment. The record shall be completed in the detail prescribed in the instructions accompanying Occupational Safety and Health Administration Form OSHA No. 101. Workmen's compensation, insurance, or other reports are acceptable alternative records, if they contain the information required by Form OSHA No. 101. If no acceptable alternative record is maintained for other purposes, Form OSHA No. 101 shall be used

or the necessary information shall be otherwise maintained.

An employer is required to post an annual summary of all occupational injuries and illnesses for each establishment. 29 C.F.R. § 1904.5 provides that this summary "shall consist of a copy of the year's totals from the form OSHA No. 200 and the following information from that form: Calendar year covered, company [n]ame[,] establishment name, establishment address, certification signature, title, and date." The summary shall be completed by February 1 of each year.

The Secretary's regulations, 29 C.F.R. §§ 1904.2, 1904.4 and 1904.5, which require the keeping of logs and records of occupational injuries and illnesses, and § 1904.7, which provides the Secretary with access to these records, are in keeping with the congressional declaration of purpose and policy set forth in 29 U.S.C. § 651 and particularly § 651(b)(12) "by providing for appropriate reporting procedures with respect to occupational safety and health which procedures will help achieve the objectives of this chapter and accurately describe the nature of the occupational safety and health problem."

In the present action there is no question as to the authority of the OSHA compliance officer to be at the Parkersburg facility of A.B. Chance to investigate an employee safety complaint. The issue presented is whether such an OSHA compliance officer, who is lawfully upon the employer's premises to investigate an employee safety complaint, may examine and copy OSHA forms No. 101 and 200 without an inspection warrant or an administrative subpoena, when OSHA regulations require the maintaining of such forms and the production thereof for inspection and copying by a representative of the Secretary of Labor for the purpose of carrying out the provisions of the Act. We hold that Chance had no reasonable expectation of privacy in OSHA forms No. 101 and 200 and the information contained therein, and that requiring the production of these records to an OSHA compliance officer, who was on the premises investigating an employee's safety complaint, was not an unreasonable search in violation of the Fourth Amendment.

## II

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

In *Maryland v. Macon,* 472 U.S. 463, 469, 105 S.Ct. 2778, 2782, 86 L.Ed.2d 370 (1985) the court stated, "A search occurs when 'an expectation of privacy that society is prepared to consider reasonable is infringed.'" The inquiry becomes whether Chance had a reasonable expectation of privacy in the OSHA forms No. 101 and 200 so as to require a search warrant or an administrative subpoena before allowing the forms to be inspected and/or copied by an OSHA compliance officer. The Supreme Court has recognized that there may be a legitimate expectation of privacy in business premises, *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), and that as a general rule, procurement of some type of warrant is required before an administrative search of business premises. *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

However, there is a limit to privacy expectations such as the one asserted here. *See California Bankers Ass'n v. Shultz,* 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974) (holding that regulations for the reporting of financial transactions by financial institutions under the Bank Secrecy Act of 1970 abridge no Fourth Amendment rights of such institutions); *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (upholding the validity of a warrantless search of firearms or ammunition dealer); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774,

25 L.Ed.2d 60 (1970) (granting agents of Alcohol and Tobacco Tax Division of the Internal Revenue Service authority to inspect facilities of licensed liquor dealers without a warrant). We followed this line of cases in *Gallaher v. City of Huntington,* 759 F.2d 1155 (4th Cir.1985), when we upheld a warrantless inspection of a record book of precious metal and gem purchases by a licensed pawnbroker. The record book in *Gallaher* was required to be maintained under a West Virginia statute. We stated:

> The greater latitude to conduct warrantless inspections of commercial property "reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home, and that this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections." *Bionic Auto Parts and Sales, Inc. v. Fahner,* 721 F.2d 1072, 1078 (7th Cir.1983). The fourth amendment requires, however, that any such intrusion be reasonable. "[T]here can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails." *Camara v. Municipal Court,* 387 U.S. 523, 536–37 [87 S.Ct. 1727, 1735, 18 L.Ed.2d 930] (1967).

759 F.2d at 1159.

■ Chance concedes that if it were part of a closely regulated industry, the requested forms could be examined without resort to a warrant or subpoena. But Chance contends that since it is not in the business of manufacturing or selling firearms, ammunition, or alcohol, nor in the business of buying and selling precious metals and gems or any other closely regulated business, a search warrant is required. However, the rationale supporting the closely regulated industry exception—whether the regulation gives an employer notice that the required records may be examined by government officials—is equally applicable here. The records are required under 29 C.F.R. §§ 1904.2 and 1904.4 and access to the records by representatives of the Secretary is provided by § 1904.7. Where the records are required to be kept and are subject to inspection, the owner of the records has a diminished expectation of privacy to the extent of the regulatory intrusion. *See Gallaher v. City of Huntington, supra.*

■ In balancing the need to search against the invasion which the search entails it is obvious that Congress intended a strong inspection enforcement scheme to fulfill the purposes of the Act. In 29 U.S.C. § 651 Congress found that personal injuries and illnesses arising out of work situations imposed a substantial burden upon interstate commerce in terms of lost production, lost wages, medical expenses, and disability compensation payments. Congress declared it to be its purpose, through the exercise of its powers to regulate commerce and to provide for the general welfare, to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions." The keeping of records by employers to show all industrial accidents, injuries, and illnesses occurring at the work place is a reasonable and necessary requirement in order for the Act to be properly administered and enforced.

The invasion which the search entails is minimal. An employer is required to keep a record of industrial injuries and illnesses and to update it within six days of receiving notice of a recordable injury or illness. A request for production of form No. 101 or 200 does not place a burden on the employer to compile a record or to dig out the supporting information, this work has already been done. All that is required is production of the form. When the need for production of the information is balanced against the invasion which producing the information entails, the scales tilt decidedly in favor of production.

There can be little expectation of privacy in forms No. 101 and 200, because 29 C.F.R. § 1904.5 requires that an annual summary of occupational injuries and illnesses, which shall consist of a copy of the year's totals from form No. 200 shall be posted in

a conspicuous place or places where notices to employees are customarily posted. There can be little expectation of privacy in information that is available to anyone observing the employer's bulletin board.

It is not unreasonable for an OSHA inspector, who is already on the company premises to investigate an employee health complaint, to require production of forms No. 101 and 200 in furtherance of his investigation. If the employee's health complaint relates to a specific machine or process, it would be reasonable for the investigator to determine if there had been injuries from the use of said machine during the past year. This information is required to be kept, and it is not unreasonable to require that it be disclosed to an OSHA investigator engaged in the investigation of an employee health complaint.

Chance contends that allowing this type of warrantless search, "devolves almost unbridled discretion" upon the OSHA compliance officer in his field search. *See Marshall v. Barlow's, Inc., supra,* 436 U.S. at 323, 98 S.Ct. at 1826. *Barlow's* is distinguishable in the degree of intrusion and the scope of the discretion involved. In *Barlow's* there was no employee complaint, and the OSHA inspector arbitrarily selected Barlow's as the subject of a generalized search, and he sought access to nonpublic areas of the business. Here, the scope of the search was narrowly tailored and covered only two documents that are mandated by regulation to be kept. This request for two documents was less intrusive than the consent search of the equipment about which the employee complained. The compliance officer did not select Chance for search by whim, caprice, or any arbitrary method. Chance was involved as a result of a health complaint made by an employee.

In *Brock v. Emerson Electric Co., Electronic & Space Division,* 834 F.2d 994 (11th Cir.1987), the court addressed the identical issue of a warrantless demand for copies of OSHA forms No. 101 and 200 and concluded that a subpoena was required. With respect, we do not agree with the *Emerson Electric* decision and refuse to follow it. In *Emerson Electric* the court stated, "Moreover, as the Commission noted, many employers kept records regarding injuries and illnesses prior to the enactment of OSHA. The fact that this information must now be compiled in a particular format does not serve to strip away a company's attendant privacy interest in that information." *Id.* at 996. However, the court does not address the more important inquiry of whether the expectation of privacy is reasonable and it does not balance the need to search against the invasion which the search entails. An employer is required to post at the workplace an annual summary of its occupational injuries and illnesses compiled from the prior year's OSHA No. 200. There is no reason to conclude that an employer's privacy expectation in the forms, or in the information contained thereon, is greater at the time OSHA requested the documents, than it is at the time the annual summary is posted.

The Eleventh Circuit noted that many employers kept such records prior to OSHA. There is no indication that Chance kept similar records, but certainly some type of record was required to be kept for West Virginia's Workers' Compensation Commission. *See, e.g.,* W.Va.Code §§ 23–2–2, 23–4–1b. However, by promulgating the record requirement, OSHA cannot be deemed to have created a privacy interest in the information contained on the forms.

The *Emerson Electric* court failed to address the limits of the discretion of the compliance officer on the issue of reasonableness. The regulation sets forth only two forms, OSHA Nos. 101 and 200. The regulation does not authorize a general nonconsensual search, and under our ruling the compliance officer must be on the employer's premises as a result of an employee's health or safety complaint before he may require production of the forms No. 101 and 200 without a warrant. Under these conditions the forms would be reasonably relevant to the investigation that OSHA is then making.

The Fourth Amendment protects "against *unreasonable* searches and seizures." We do not find the production of

OSHA forms No. 101 and 200 to be unreasonable on the present facts.

REVERSED.