Robert B. REICH, Secretary of Labor, Petitioner–Appellee,

v.

NATIONAL ENGINEERING & CONTRACTING COMPANY; Tri–State Steel Construction Company, Respondents–Appellants.

No. 92–2598.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1993.

Decided Dec. 14, 1993.

Kent William Seifried, Poston, Seifried & Schloemer, Newport, KY, argued (Gene W. Bailey, II, Jackson & Kelly, Charleston, WV, on brief) for respondents-appellants.

John Robert Shortall, U.S. Dept. of Labor, Washington, DC, argued (Judith E. Kramer, Deputy Sol., Joseph W. Woodward, Associate Sol. for Occupational Safety and Health, Ann Rosenthal, Counsel for Appellate Litigation, U.S. Dept. of Labor, on brief) for petitioner-appellee.

Before RUSSELL, Circuit Judge, SPROUSE, Senior Circuit Judge, and GARBIS, United States Judge for the District of Maryland, sitting by designation.

## OPINION

DONALD RUSSELL, Circuit Judge:

Defendants National Engineering & Contracting Company and Tri–State Steel Construction Company appeal the district court's order enforcing subpoenas that required them to produce certain safety records for the Secretary of Labor. We find no error in the order and affirm.

### I

The Occupational Safety and Health Act (the Act), 29 U.S.C. §§ 651–678, was enacted "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). In enforcing the Act, the Secretary of Labor (the Secretary), acting through the Occupational Safety and Health Administration (OSHA), is authorized to enter workplaces and inspect the safety of their conditions. 29 U.S.C. § 657(a). He is also authorized to promulgate regulations compelling employers to keep records on the health and safety of their employees. 29 U.S.C. § 657(c)(1), 657(c)(2).

Pursuant to these provisions, the Secretary has issued regulations requiring employers to maintain at their workplaces a log and summary, on OSHA Form 200's, of all serious occupational injuries and illnesses suffered by their employees at that workplace over the past five years. 29 C.F.R. § 1904.-2(a), 1904.6, 1904.12(c), 1904.12(g). These regulations prescribe that "each employer shall provide, upon request, [its OSHA Form 200's] for inspection and copying by any representative of the Secretary of Labor for the purpose of carrying out the provisions of the [A]ct." 29 C.F.R. § 1904.7(a).

National Engineering & Contracting Company and Tri–State Steel Construction Company (the Companies) served as contractor and subcontractor, respectively, on a bridge renovation project at the Goldtown interchange on Interstate 77 in Sissonville, West Virginia. In July, 1992, in response to a media report that one of the Companies' employees had fallen off the bridge at the Goldtown project, OSHA began an investiga-

tion of the Companies' worksite there. This investigation revealed that two employees had sustained injuries from falls at the worksite.

As a result of these findings, OSHA broadened its investigation to inquire into the effectiveness of the "overall fall protection program" used by the Companies at all of their worksites. In connection with this inquiry, OSHA issued to the Companies subpoenas for, among other things, copies of their 1990 and 1991 Form 200's from their worksites outside of West Virginia. When the Companies refused to produce these requested copies, OSHA brought an action in the Southern District of West Virginia to enforce the subpoenas.

The district court enforced the subpoenas as OSHA requested and directed the Companies to produce for OSHA the requested copies of its Form 200's. After the district court declined to stay its order pending appeal, the Companies complied with the subpoenas and produced the requested copies. They now appeal the order, alleging that the district court erred in enforcing the subpoenas.

## II

We must first address whether we have jurisdiction, under 28 U.S.C. § 1291, to hear their appeal. We conclude that we do.

Section 1291 confines our jurisdiction to review of only those district court orders that are "final." 28 U.S.C. § 1291. Orders enforcing subpoenas issued in connection with civil and criminal actions, or with grand jury proceedings, are normally not considered final. *United States v. Ryan,* 402 U.S. 530, 532–33, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States,* 309 U.S. 323, 328, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940); *Alexander v. United States,* 201 U.S. 117, 121, 26 S.Ct. 356, 358, 50 L.Ed. 686 (1906); 15B Charles A. Wright et al., *Federal Practice and Procedure: Jurisdiction 2d* § 3914.23, at 123 (1992). To obtain immediate review of such a district court enforcement order, the party to whom it is issued must defy it so that a contempt order, which is considered final, is entered

against him. *Ryan,* 402 U.S. at 532, 91 S.Ct. at 1581; *Cobbledick,* 309 U.S. at 328, 60 S.Ct. at 542; *Alexander,* 201 U.S. at 121, 26 S.Ct. at 358; Wright, *supra,* § 3914.23, at 123. The purpose of this rule is to discourage parties from pursuing appeals from orders enforcing these subpoenas, which would temporarily halt the district court's litigation process or the grand jury process. *Ryan,* 402 U.S. at 532–33, 91 S.Ct. at 1581–82; *Cobbledick,* 309 U.S. at 327, 60 S.Ct. at 542; Wright, *supra,* § 3914.23, at 154–55.

The appealability of district court orders enforcing subpoenas issued by government agencies in connection with administrative investigations, however, has been regarded differently. In *Ellis v. ICC,* 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036 (1915), the Supreme Court addressed the appealability of a district court's order enforcing an Interstate Commerce Commission (ICC) petition that directed a witness to answer questions and produce documents for an administrative investigation. Justice Holmes, writing for the Court, had "no doubt that this appeal lies," *id.* at 442, 35 S.Ct. at 645, because the order was "the end of a proceeding begun against the witness," *id.*

The Court elaborated on this reasoning a quarter century later in *Cobbledick,* stating that a district court's order enforcing an ICC request that a witness produce documents or answer questions for an administrative investigation was immediately reviewable because the district court proceeding out of which the order arose

> may be deemed self-contained, so far as the judiciary is concerned. . . . After the Court has ordered a recusant witness to testify before the Commission, there remains nothing for it to do. Not only is this true with respect to the particular witness whose testimony is sought; there is not, as in the case of a grand jury or trial, any further judicial inquiry which would be halted were the offending witness permitted to appeal.

*Cobbledick,* 309 U.S. at 330, 60 S.Ct. at 543. In other words, district court orders enforcing subpoenas in connection with grand jury proceedings or criminal or civil trials are not immediately appealable, absent a contempt

citation, because such appeals would greatly delay the judicial process; orders enforcing subpoenas in connection with administrative investigations, by contrast, may be appealed immediately because there is no judicial proceeding in process that such appeals would delay.

The Court reached the same result in the context of an investigation by the Internal Revenue Service (IRS) in *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), where it held immediately appealable a district court order dismissing a taxpayer's challenge to IRS subpoenas for his financial records. *Id.* at 449, 84 S.Ct. at 513. The Court recently reaffirmed *Reisman* in *Church of Scientology v. United States*, —— U.S. ——, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992). There a taxpayer who was being investigated by the IRS appealed a district court order enforcing an IRS summons for his financial records. The Court found unanimously that the order was appealable, *id.* at ——, 113 S.Ct. at 451, and, citing *Reisman*, stated that "we have expressly held that IRS summons enforcement orders *are* subject to appellate review," *id.* (emphasis in original).

■ The reasons stated by the Court in *Ellis* and *Cobbledick* for allowing immediate appeals from district court orders enforcing subpoenas in ICC investigations, which were followed in the context of tax investigations in *Reisman* and *Church of Scientology*, apply equally in all administrative investigations.

And every court of appeals to address the appealability of orders enforcing subpoenas in various types of administrative investigations has determined that these orders are immediately appealable. *See, e.g., Kemp v. Gay*, 947 F.2d 1493, 1495–97 (D.C.Cir.1991) (Department of Housing and Urban Development investigation); *Dole v. Local Union 375, Plumbers Int'l Union*, 921 F.2d 969, 971–72 (9th Cir.1990) (Department of Labor investigation), *cert. denied*, —— U.S. ——, 112 S.Ct. 197, 116 L.Ed.2d 157 (1991); *EEOC v. University of New Mexico*, 504 F.2d 1296, 1300 (10th Cir.1974) (Equal Employment Opportunity Commission investigation);[1] *see also Shea v. Office of Thrift Supervision*, 934 F.2d 41, 46 (3d Cir.1991) (stating that when a "subpoenaed party has been ordered [by the district court] to comply [with an Office of Thrift Supervision subpoena,] ... the party may have [the] order reviewed by this court"); *cf. United States v. Stauffer Chemical Co.*, 684 F.2d 1174, 1177 (6th Cir.1982) (finding appealable a district court order refusing to quash an administrative search warrant in an EPA investigation), *aff'd*, 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984).[2]

In light of all of these opinions, one leading treatise states that it has been "a longstanding practice" to allow appeals from district court orders enforcing subpoenas issued in connection with administrative investigations. Wright, *supra*, § 3914.26, at 193;[3] *see also* 4

1. Some courts of appeals, including this Court, have at times reviewed district court orders enforcing administrative subpoenas without raising or discussing whether such orders were appealable. *Dole v. Trinity Industries, Inc.*, 904 F.2d 867 (3d Cir.), *cert. denied*, 498 U.S. 998, 111 S.Ct. 555, 112 L.Ed.2d 562 (1990); *Hintze v. IRS*, 879 F.2d 121 (4th Cir.1989), *overruled on other grounds, Church of Scientology v. United States*, —— U.S. ——, & n. 8, 113 S.Ct. 447, 451 & n. 8, 121 L.Ed.2d 313 (1992); *Commodity Futures Trading Comm'n v. Weintraub*, 722 F.2d 338 (7th Cir.1984), *rev'd on other grounds*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).

2. One court of appeals has found not immediately appealable a district court's order denying a motion to quash an inspection warrant in an administrative investigation. *In re Consolidated Rail Corp.*, 631 F.2d 1122, 1123 (3d Cir.1980). The court in that case stated that the "one to whom [the] subpoena is directed may not appeal

the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt." *Id.* (quotation omitted). That court has since made clear, however, that it distinguishes a district court order denying a motion to quash an administrative subpoena or warrant from a district court order enforcing an administrative subpoena or warrant, which it regards as a final order from which a party may appeal without subjecting himself to contempt. *Shea*, 934 F.2d at 45–46 & n. 9. We express no view as to the holding in *Consolidated Rail Corp.* or as to this distinction, but note only that *Consolidated Rail Corp.* does not apply to the case at bar, where the issue is the appealability of a district court order enforcing an administrative subpoena.

3. The Wright & Miller treatise does note the Third Circuit's holding in *Consolidated Rail Corp.* and states that "[i]f courts should become per-

James W. Moore et al., *Moore's Federal Practice* ¶ 26.83[4], at 26–438 to 26–440 (1993) (indicating that, with limited exceptions that do not apply here, "when an administrative agency initiates proceedings in the district court to enforce an administrative subpoena, the decision of the court . . . enforcing . . . the subpoena is final for purposes of appeal").

We follow this longstanding practice and find that we have jurisdiction, under section 1291, to review the district court's order enforcing the subpoenas issued to the Companies in connection with OSHA's investigation.

### III

■ Another issue remains, however, before we can reach the merits of the Companies' challenge to the district court's order enforcing OSHA's subpoenas: whether the Companies, by complying with the district court's order and delivering to OSHA the requested copies of their Form 200's, mooted their action. We find that they did not.

Federal courts have "no authority to give opinions upon moot questions." *Church of Scientology*, —— U.S. at ——, 113 S.Ct. at 449 (quotation omitted). A question in a case is moot if it is "impossible for the court to grant 'any effectual relief whatever'" to the party that prevails on it. *Id.* (quoting *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)).

In *Kurshan v. Riley*, 484 F.2d 952 (4th Cir.1973), the district court had denied a taxpayer's motion to enjoin the IRS from taking the testimony of a witness pursuant to a summons issued in an investigation of the taxpayer. Before this Court heard the taxpayer's appeal, the IRS took the witness's testimony. We found the taxpayer's appeal moot because "the testimony of [the witness] ha[d] already been taken." *Id.* at 952.

We followed *Kurshan* in *Hintze v. IRS*, 879 F.2d 121 (4th Cir.1989). In *Hintze*, the district court had issued orders enforcing IRS summonses to obtain two taxpayers' financial records. These records had been delivered to the IRS before we heard the taxpayers' appeal contesting them. We found that delivery of the records to the IRS had rendered moot the taxpayers' challenge to the enforcement orders because "the information [in the records] ha[d] already been provided and thus this court would [have] be[en] powerless to provide relief that would affect the rights of the litigants." *Id.* at 125.

The Supreme Court addressed this same issue, however, last term in *Church of Scientology*. There the district court enforced an IRS summons to obtain certain audio tapes on which were recorded some of the taxpayer's conversations. While the taxpayer's appeal of the district court's enforcement order was pending, copies of the tapes were delivered to the IRS in compliance with the order. The Court unanimously rejected the government's argument that delivery of the tapes mooted the taxpayer's challenge to the order, stating:

> While a court may not be able to return the parties to the *status quo* ante—there is nothing a court can do to withdraw all knowledge or information that IRS agents may have acquired by examination of the tapes—a court can fashion *some* form of meaningful relief in circumstances such as these. Taxpayers have an obvious possessory interest in their records. When the government has obtained such materials as a result of an unlawful summons, that interest is violated and a court can effectuate relief by ordering the Government to return the records. Moreover, even if the Government retains only copies of the disputed materials, a taxpayer still suffers injury by the Government's continued possession of these materials, namely, the affront to the taxpayer's privacy.

*Id.* at ——, 113 S.Ct. at 450. As a result, the Court concluded that "this case [was] not moot because if the summons [had been]

---

suaded that it is as important to avoid delay of ongoing administrative proceedings as it is to avoid delay of grand jury investigations, [they] may begin to corrode the traditional rule [that parties may appeal orders enforcing administrative subpoenas without subjecting themselves to contempt]." Wright, *supra*, § 3914.26, at 198 & n. 13. We, however, are precluded from "corrod[ing] th[is] traditional rule" because it has been squarely adopted and followed by the Supreme Court in *Ellis, Cobbledick, Reisman,* and *Church of Scientology*.

improperly issued or enforced[,] a court could [have] order[ed] that the IRS' copies of the tapes be either returned or destroyed." *Id.* at ——, 113 S.Ct. at 451. It "recognize[d] that several Courts of Appeals have accepted the Government's argument [that the taxpayers' case was moot]," *id.,* specifically citing *Kurshan* and *Hintze, id.* at —— n. 8, 113 S.Ct. at 451 n. 8, but it expressly rejected these courts of appeals holdings in favor of "a similar array of decisions reaching a contrary conclusion," *id.* at ——, 113 S.Ct. at 451.

We find that *Church of Scientology* overruled our opinions in *Kurshan* and *Hintze* and that it controls the case at bar. The Companies here delivered to OSHA copies of their 1990 and 1991 Form 200's for their worksites outside of West Virginia. While the Companies may not have possessory interest in these copies, *see Church of Scientology,* —— U.S. at ——, 113 S.Ct. at 450 (questioning whether a party has possessory interest in copies of its subpoenaed documents), they do have a privacy interest in the information contained in them. These copies contain a log and a summary of all of the serious occupational injuries and illnesses suffered by the Companies' employees at all of the Companies' worksites outside of West Virginia over a two-year period. Prior to the enactment of the Occupational Safety and Health Act, the Companies certainly would have had some privacy interest in this information on their employees' injuries and illnesses. *Cf. New York v. Burger,* 482 U.S. 691, 699, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987) (stating that an owner of a business has a privacy interest in his commercial property). That *this information must now* be compiled on Form 200's does not eliminate entirely the Companies' privacy interest in it.

Indeed, we expressly held that employers have a privacy interest in the information contained in their Form 200's in *McLaughlin v. A.B. Chance Co.,* 842 F.2d 724 (4th Cir. 1988). There we addressed whether OSHA's need to examine an employer's Form 200's without a warrant or subpoena outweighed the employer's privacy interest in the information contained in its Form 200's. While we held that OSHA's need outweighed the "[privacy] invasion which the search en-

tail[ed]," *id.* at 728, we indicated that an employer does have "privacy expectations in the forms, or in the information contained thereon," *id.*

The other courts of appeals to address the issue have also concluded that employers do have a privacy interest in the information contained in their Form 200's. *McLaughlin v. Kings Island, Div. of Taft Broadcasting Co.,* 849 F.2d 990, 995 (6th Cir.1988) ("[E]mployers have a recognizable privacy interest in [their Form 200's], even though the employer is required by law to keep them."); *Brock v. Emerson Elec. Co., Elec. & Space Div.,* 834 F.2d 994, 996 (11th Cir.1987) ("We find no reason to conclude that the privacy interest which normally attaches to commercial information does not attach [to the information on Form 200's].")

This privacy interest the Companies have in the information contained in the delivered copies of their Form 200's plainly would be benefitted by an order requiring OSHA to return or destroy these copies. As a result, it is not "impossible" for us to grant to the Companies "any effectual relief whatsoever" in the case at bar, *Church of Scientology,* —— U.S. at ——, 113 S.Ct. at 449, and, thus, the case is not moot.

IV

Because we find that the district court's order enforcing OSHA's subpoenas was "final" and appealable, and that this appeal was not mooted by the Companies' delivery of the requested Form 200 copies to OSHA, we come at last to the merits of this appeal, the Companies' challenge to the district court's decision to enforce the subpoenas. We review this decision under the "clearly erroneous" standard, *Hintze,* 879 F.2d at 125, and determine that it was not clearly erroneous.

The parties agree that OSHA's subpoenas were properly enforced if (1) the subpoenas were within OSHA's authority, (2) OSHA satisfied due process in issuing them, (3) the information sought was "relevant and material" to an OSHA investigation, and (4) the subpoenas were not unduly burdensome. *EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 475–76 (4th Cir.), *cert. denied,* 479 U.S. 815,

107 S.Ct. 68, 93 L.Ed.2d 26 (1986).[4] The only challenge raised by the Companies to the district court's decision to enforce the subpoenas is that the district court erred in finding, on the third element, that the information contained in the copies of the Companies' Form 200's from outside West Virginia was relevant and material to an OSHA investigation.

◼ We have no trouble deciding that the district court did not clearly err in this finding. OSHA had found in an·investigation of the Companies' worksite at their Goldtown project in West Virginia that two employees had sustained injuries there from falls. This prompted it to inquire into the effectiveness of the "overall fall protection program" used by the Companies at all of their worksites. It was in connection with this inquiry that OSHA issued these subpoenas requesting copies of the Companies' Form 200's for 1990 and 1991 from their worksites outside of West Virginia, which contained a log and summary of their employees' serious occupational injuries and illnesses at those worksites. In its petition to enforce the subpoenas, OSHA stated that it needed the information on these Form 200's "in order to determine the effectiveness or ineffectiveness of [the Companies'] fall protection program and to determine whether the falls at the Goldtown site were isolated incidents of employee misconduct or indicative of a pattern of [the Companies'] inadequate enforcement of their overall fall protection program."[5]

OSHA was plainly acting within its authority when, in response to two falls by employees at one of the Companies' worksites, it inquired into whether "the overall fall protection program" used by the Companies at all of their worksites was adequate.[6] It is

4. An interesting issue, not raised by the government, is whether the district court needed to find these elements in order to enforce the subpoenas. The Supreme Court set forth the requirements for enforcing an administrative subpoena in *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), and *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). *Morton* addressed a Fourth Amendment challenge to an order of the Federal Trade Commission demanding that several corporations produce information on their production, pricing and marketing practices. The Court found that the order complied with the Fourth Amendment if "the inquiry [was] within the authority of the agency, the demand [was] not too indefinite and the information sought [was] reasonably relevant." *Morton Salt*, 338 U.S. at 652, 70 S.Ct. at 369. The Court stated similarly in *See:* "[W]hen an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that the compliance will not be unreasonably burdensome." *See,* 387 U.S. at 544, 87 S.Ct. at 1740.

We have held, however, that the Fourth Amendment does not require OSHA to issue a subpoena when it seeks an employer's Form 200's, *A.B. Chance Co.*, 842 F.2d at 726–29; OSHA may, instead, obtain the employee injury and illness information on these forms simply by requesting it in the course of an on-site investigation, *id.* Because the Fourth Amendment allows OSHA to obtain an employer's Form 200 information in this fashion, an argument can be made that it also allows a district court to enforce subpoenas for this information without making the findings as to agency authority, due process,

relevance and burden that it normally requires to enforce an administrative subpoena. The district court here did make these findings in enforcing OSHA's subpoenas, however, and we determine that they were not clearly erroneous. We, therefore, need not address this argument, and we take no position with respect to it.

5. The Companies assert that when OSHA sought to have its subpoenas enforced on October 30, 1992, it had practically completed its investigation of the Goldtown project worksite (OSHA stated later that the investigation ended on November 12, 1992), and had concluded that the worksite did not violate its fall protection regulations. They, therefore, conclude that the information sought on the requested copies of their Form 200's could not be relevant to this investigation. The Companies, however, misconstrue OSHA's purpose in requesting this information. OSHA did not seek this information to evaluate the Companies' fall protection program at the Goldtown project worksite—indeed, because the requested copies only contained the Companies' injury and illness records for worksites outside of West Virginia, it is difficult to see how these copies could be at all relevant to the Companies' fall protection program at the Goldtown project worksite. Rather, as OSHA made clear in its petition to enforce the subpoenas, it sought these copies so that it could evaluate the Companies' "overall fall protection program" at all of its worksites. There is no evidence that OSHA had completed its inquiry into the Companies' "overall fall protection program" when it sought to have the subpoenas enforced.

6. The Companies place great emphasis on the fact that OSHA had not found that they had

equally plain that the information contained in the requested Form 200's on the Companies' employees' serious occupational injuries at worksites outside of West Virginia was relevant and material to this inquiry. As a result, we conclude that the subpoenas here sought information relevant and material to an OSHA investigation and, thus, the district court did not err in enforcing them.

## V

For the reasons set forth, we affirm the district court's order enforcing OSHA's subpoenas.

*AFFIRMED.*

violated its fall protection regulations when it initiated its inquiry into their overall fall protection program and issued these subpoenas for copies of their Form 200's for all of their worksites. The Companies reason that, as there was no finding that they violated fall protection regulations, there can be "no factual basis" for an inquiry into their overall fall protection program and any information sought in connection with such an investigation cannot be deemed relevant. This reasoning is flawed. OSHA need not find that an employer's fall protection program vio-lates its regulations before beginning an investigation of the program—such an investigation may legitimately be, and often is, initiated for the purpose of determining *whether* an employer's program violates OSHA's regulations. *See Morton Salt*, 338 U.S. at 642–43, 70 S.Ct. at 364 (observing that "an administrative agency charged with seeing that the laws are enforced ... has a power of inquisition ... [under which it] can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.").