06-5696-cv
NextG Networks of NY, Inc., v. City of New York, et al.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

------------

August Term, 2007

(Argued: October 17, 2007          Decided: January 15, 2008)

Docket No. 06-5696-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

NEXTG NETWORKS OF NY, INC.,

Plaintiff-Appellant,

- against -

CITY OF NEW YORK, CITY OF NEW YORK DEPARTMENT OF INFORMATION
TECHNOLOGY AND TELECOMMUNICATIONS and PAUL J. COSGRAVE, in his
official capacity,

Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before:   KEARSE and HALL, Circuit Judges, and
          RAKOFF, District Judge.[*]

    Plaintiff NextG Networks of NY, Inc. appeals from a
judgment of the United States District Court for the Southern
District of New York (Berman, J.), entered March 7, 2006,
granting defendants' motion for summary judgment.  We hold that

_____

[*]The Honorable Jed S. Rakoff, United States District Judge
for the Southern District of New York, sitting by designation.

-1-

a telecommunications provider may not bring a cause of action for money damages under 42 U.S.C. § 1983 for violation of Section 253 of the Telecommunications Act of 1996. We also hold that NextG's claims for declarative and injunctive relief on the basis that Section 253 prohibits or preempts the City's laws and regulations governing the provision of telecommunications services via the public rights-of-way are not moot and should be considered by the District Court on remand. Affirmed in part, reversed in part, and remanded.

T. SCOTT THOMPSON (David M. Shapiro *on the brief*), Davis Wright Tremaine LLP, Washington, D.C. <u>for</u> <u>Plaintiff-Appellant</u>.

KAREN M. GRIFFIN, Assistant Corporation Counsel (Francis F. Caputo, Bruce Regal, Diana M. Murray *on the brief*), for Michael A. Cardozo, Corporation Counsel of the City of New York, New York, N.Y. <u>for</u> <u>Defendants-Appellees</u>.

RAKOFF, <u>District Judge</u>.

Plaintiff-appellant NextG Networks of NY, Inc. ("NextG") appeals from a judgment of the United States District Court for the Southern District of New York (Berman, J.), granting summary judgment in favor of the defendants-appellees (collectively, "the City").

Broadly speaking, this case concerns whether the City has impeded NextG's access to the New York City telecommunications market by unlawfully denying NextG the use of City-owned poles. NextG, a wholesale provider of telecommunications services, offers other wireless carriers a method for extending wireless

-2-

coverage to "dead spots." It does this, among other ways, by constructing a continuous grid of low-level antennas ("nodes") mounted at heights of no more than approximately 30 feet from the ground. To construct such a network in New York City, NextG proposes to install nodes and node equipment on City-owned utility poles and streetlight poles in the public rights-of-way.[1] Under the New York City Charter, before any entity can use the "inalienable property" of the City, including City poles, it must first obtain a franchise. Such a franchise is available only if the City's Department of Information Technology and Telecommunications ("DoITT") makes an initial determination of the need for franchises of a particular type, and the New York City Council then adopts a resolution authorizing the granting of such franchises. Once this is done, DoITT issues a Request for Proposals ("RFP") pursuant to which an individual entity may apply for such a franchise. If DoITT approves the application, the franchise is subject to a public hearing, approval by the Mayor, and review and approval by the Franchise and Concession Review Committee, before it can finally

_____

[1]While NextG claims, and the City disputes, that NextG has no reasonable alternative to such use of City-owned property, we do not reach that issue here.

be granted.

In connection with the provision of mobile telecommunications services, the City Council, beginning in 1994, passed three successive resolutions authorizing DoITT to issue franchises for the installation of telecommunications equipment and facilities on, over, and under the "inalienable property" of the City. The resolution that was in place when NextG first brought this action was Resolution No. 957, which took effect on August 11, 1999. Even though, under Resolution No. 957, no entity could apply for or obtain a franchise unless and until DoITT issued an RFP, for the first four-and-a-half years after the enactment of Resolution No. 957 DoITT did not issue an RFP. Thus, when, in March 2002, NextG first contacted the City about obtaining a franchise to deploy its equipment on City-owned poles, it was told, in effect, that it would have to await the issuance of an RFP, which it was assured would issue shortly. When, however, no RFP issued, NextG nonetheless submitted an application for a franchise, to which the City did not respond in writing. After waiting many months for a response, NextG, in December 2003, filed this action.

After the action was filed, DoITT, on February 9, 2004, finally issued an RFP (the "2004 RFP") entitled a "Request For

Proposals For Franchises For The Installation And Use, On City-Owned Street Light Poles, Traffic Light Poles And Highway Sign Support Poles, Of Telecommunications Equipment And Facilities, Including Base Station And Access Point Facilities, In Connection With The Provision Of Mobile Telecommunications Services." The deadline for submitting franchise applications pursuant to the 2004 RFP was April 16, 2004. NextG and eight other companies duly submitted applications. Two applicants then withdrew their proposals. On April 30, 2004, DoITT sent letters to the remaining applicants, stating, in effect, that no franchise would be granted to any applicant who did not commit to various requirements. NextG declined to commit to a number of the requirements, including a commitment to pay a minimum annual "zone" compensation fee of $100,000 and a minimum bid of $250 per pole per month for the zone encompassing Manhattan; an agreement to accept a "priority rating" for a particular zone based on an entity's per pole bid; and an agreement to a system whereby if there were competing requests for use of the same pole, the requesting company with the highest priority rating in that zone would have first option to utilize the pole for a certain period of time. Accordingly, the City refused to grant NextG a franchise. It did, however,

grant franchises to the other six applicants, who agreed to these conditions.

Meanwhile, on March 2, 2004, NextG amended its complaint to seek a declaration that the City's rules, regulations and requirements embodied in the City Charter, in Resolution No. 957, and in the 2004 RFP violated Section 253 of the Telecommunications Act of 1996, 47 U.S.C. § 253. It also requested an order enjoining the City from enforcing these rules and regulations. Finally, it sought damages under 42 U.S.C. § 1983 for the City's alleged violations of Section 253.

On August 11, 2004, Resolution No. 957 expired, by its own terms. Although a new, similar resolution, Resolution No. 519, was enacted on March 23, 2005, no RFP was issued pursuant to Resolution No. 519 until July 19, 2007.

In the interim, on March 6, 2006, the District Court granted the City's motion for summary judgment. In its Decision and Order, the District Court concluded that it would be "inappropriate to issue a declaratory judgment with respect to the [City] Charter, Resolution No. 957, and 2004 RFP because (i) Resolution No. 957 and the 2004 RFP have expired and (ii) NextG has an available claim for money damages under Section 1983." In a footnote, the District Court noted that "NextG does not

appear to have requested that the Court declare that the City's new franchise scheme under Resolution No. 519 is preempted by Section 253. In any event, on this record, there does not appear to be a 'real and immediate controversy' regarding Resolution No. 519."[2]

The District Court also found that injunctive relief was not warranted because, given its prior ruling that an action for damages was available, NextG had not established "that it suffered or is likely to suffer irreparable injury."

Finally, with regard to NextG's claim for money damages, the District Court held that, because NextG had offered no evidence as to the actual economic effect on NextG of the City's requirements that NextG was challenging, NextG's claim for damages must be dismissed.

We review a district court's grant of summary judgment de novo. Physicians Comm. for Responsible Med. v. Johnson, 436 F.3d 326, 331 (2d Cir. 2006). To begin with, we agree with the District Court that NextG's claim for damages under 42 U.S.C. §

---

[2]On March 17, 2006, NextG moved for leave to amend its complaint to challenge the legality of Resolution No. 519. The district court denied plaintiff's motion to amend its complaint, finding that Resolution No. 519 had not been previously litigated in the case and that allowing plaintiff to amend would be prejudicial at this stage.

1983 must be dismissed, but for a different reason than that given by the District Court.[3] Specifically, we conclude that a telecommunications provider may not bring a cause of action for damages under Section 1983 for violations of Section 253 of the Telecommunications Act of 1996.

Only "rights, not the broader or vaguer benefits or interests" may be enforced through § 1983. Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002) (internal quotation marks omitted) (emphasis in original). See also Blessing v. Freestone, 520 U.S. 329, 340 (1997) ("In order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal right, not merely a violation of federal law") (emphasis in original). The determination of whether a particular federal statute creates a federal right of the kind enforceable by an action for damages under § 1983 requires inquiry into "whether or not Congress intended to confer individual rights upon a class of beneficiaries." Gonzaga, 536 U.S. at 285. See also Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury, 445 F.3d 136, 149-50 (2d

[3] A Court of Appeals "may, of course, affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court." ACEquip Ltd. v. Am. Eng'g Corp., 315 F.3d 151, 155 (2d Cir. 2003).

Cir. 2006).

The District Court believed that such rights were conferred on telecommunications providers by Section 253, primarily because, in the District Court's view, Section 253 "is phrased in terms of persons (entities) benefitted, i.e. telecommunications providers." But the statutory language to which the District Court referred in support of this analysis simply states, in relevant part, that "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). We read this language as intended to place limits on state and local governments, rather than as intended to benefit an identified class of putative plaintiffs.

This reading is further confirmed by the additional statutory language that "Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is

publicly disclosed by such government." 47 U.S.C. § 253(c). In other words, the purpose of Section 253 is to impose some limits on the ability of state and local governments to regulate telecommunications but not to interfere with the right of such governments to impose reasonable charges for the concomitant use of public property. Similarly, the legislative history, although not definitive on this issue, shows that Congress was concerned with requirements to be placed on state and local governments and not with benefits to be conferred on telecommunications providers. See, e.g., 141 Cong. Rec. S8170 (daily ed. June 12, 1995), 141 Cong. Rec. S8308 (daily ed. June 14, 1995) (discussion of where local governments would be permitted to defend preemption challenges to local ordinances).

The two other Circuits that have addressed this issue directly have similarly held that there is no private damages action under Section 1983 for a violation of Section 253. See Sprint Telephony PCS, L.P. v. County of San Diego, 490 F.3d 700, 716-17 (9th Cir. 2007) (no cause of action for damages under § 1983 for violation of § 253 because § 253 is phrased in terms of the parties restricted, i.e. states and local governments); Qwest Corp. v. City of Santa Fe, 380 F.3d 1258, 1265-67 (10th Cir. 2004) (no cause of action under § 1983 for violation of §

-10-

253 because § 253 grants "no private rights to any identifiable class") (internal quotation marks omitted). Although the District Court appeared to believe that a contrary view had been expressed by two other Circuits, in TCG Detroit v. City of Dearborn, 206 F.3d 618, 622-23 (6th Cir. 2000) and BellSouth Telecomms., Inc. v. Town of Palm Beach, 252 F.3d 1169, 1189-91 (11th Cir. 2001), these cases, which preceded the Supreme Court's decision in Gonzaga, concerned, not the existence of a right enforceable by an action in damages under § 1983, but rather whether a private cause of action existed directly under § 253 to assert preemption of a state or local statute or regulation.[4]  Neither case expressed any view on the availability

---

[4]In TCG Detroit, the Sixth Circuit declined to hold that it had jurisdiction to adjudicate a claim for preemption under the Supremacy Clause and instead analyzed whether § 253(c) created a private right of action in federal courts.  206 F.3d at 622-23. After holding that § 253(c) was not a safe harbor provision but instead an independent basis for municipal liability under § 253, the Court held that § 253(c) authorized a private right of action in federal court for telecommunications providers aggrieved by municipal action.  Id. at 624.  In addition to not presenting the issue now before this Court, the TCG Detroit decision is directly contradicted by our decision in TCG New York, Inc. v. City of White Plains, 305 F.3d 67, 77 (2d Cir. 2002), which concluded that § 253(c) is a savings clause, and by our decision in W. Air Lines, Inc. v. Port Auth., 817 F.2d 222, 225-26 (2d Cir. 1987), which held that a private right of action is not required where a party seeks to enjoin the enforcement of a local rule or regulation on the ground that the regulation is preempted by federal law.  Similarly, in BellSouth, 252 F.3d at 1189-91, the Eleventh Circuit did not consider possible jurisdiction under the Supremacy Clause and instead held that because Congress clearly

-11-

of damages under § 1983.

From our conclusion that § 253 does not create a private right of action for damages, it follows that we do not agree either with the portion of the District Court's decision that denied injunctive relief on the ground that NextG had an adequate remedy in damages and could not establish irreparable harm or with the correlative portion of the District Court's decision that found that the availability of an action for damages under § 1983 weighed against the granting of declarative relief.  But the District Court also suggested that it would be "inappropriate" to grant such relief in light of the expiration of Resolution No. 957 and the 2004 RFP.  Again, we are constrained to disagree.  The gist of NextG's claims in the Amended Complaint was that the City's entire approach to the granting of franchises for the purposes here sought is prohibited or preempted by Section 253.  Nothing in the expiration of Resolution No. 957 and the 2004 RFP (and their replacement by Resolution No. 519 and the 2007 RFP) renders this issue moot.  See County of Los Angeles v. Davis, 440 U.S. 625,

_____

intended that local governments be permitted to defend preemption challenges in their local district courts, a private cause of action in federal district court exists under § 253 to seek preemption of state or local regulations.

-12-

631 (1979).

A dispute usually becomes moot if the defendant can demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Granite State Outdoor Adver. v. Town of Orange, 303 F.3d 450, 451 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Specifically, with regard to state or local ordinances that expire by their own terms, expiration will not moot a challenge "if there is a reasonably concrete basis to anticipate that the expired rule will be reenacted in a form that will raise the same questions." Catanzano v. Wing, 277 F.3d 99, 107 (2d Cir. 2001) (internal quotation marks omitted).

Here, the expiration of Resolution No. 957 and the 2004 RFP did not obviate appellant's claims or completely eradicate the effects of the City's regulatory scheme. For one thing, NextG's Amended Complaint challenged not only Resolution No. 957 and the 2004 RFP, but also the provisions of the City Charter on which the Resolution and RFP were predicated. Therefore, at a minimum, NextG's claim that these provisions of the City Charter are preempted by the Telecommunications Act of 1996 is not moot. See Lamar Adver. of Penn, LLC. v. Town of Orchard Park, New

York, 356 F.3d 365, 379 (2d Cir. 2004).

Furthermore, the gravamen of NextG's complaint was that the City's regulatory scheme as a whole violated Section 253 of the Telecommunications Act of 1996 because the "City assumes that it has the unfettered discretion and power to determine who may or may not provide telecommunications services." This claim was not mooted by the expiration of Resolution No. 957 or the 2004 RFP. On the contrary, it applied with even greater force after the Resolution and the RFP expired because the expirations worked to prevent, perhaps indefinitely, any entity from using City poles to provide telecommunications services.

Further still, even NextG's more specific claims regarding Resolution No. 957 and the 2004 RFP were not mooted when the Resolution and the RFP expired because there was a reasonable basis on which to anticipate that the ordinances would be reenacted in a form that would raise the same questions, see Catanzano, 277 F.3d 99 at 107-08. Just as Resolution No. 957 itself was essentially identical to its predecessor, Resolution No. 438 of 1994, so also, well before the District Court rendered its judgment in this case, the City enacted, on March 23, 2005, a successor resolution, Resolution No. 519, that, again, was substantially similar to Resolution No. 957 in many

-14-

of the respects challenged by NextG's complaint.  From this past practice, moreover, it was predictable that the 2007 RFP, though issued after the District Court rendered its decision, would be substantially similar to the 2004 RFP -- as indeed proved to be the case.[5]

Accordingly, while we affirm the dismissal of NextG's claim for damages, we reverse the dismissal of its claims for declarative and injunctive relief and remand to the District Court for consideration, inter alia, of NextG's claims that the City's regulatory scheme is in material respects prohibited or preempted by the Telecommunications Act of 1996.

---

[5]Without disturbing the District Court's December 2006 Order denying NextG's motion to amend the complaint, we conclude that it would be appropriate on remand for the District Court to permit NextG to amend its complaint to challenge Resolution No. 519 and the 2007 RFP.