**Jack KEMP, Secretary of Housing and Urban Development, Appellee,**

v.

**Gerald GAY, President, Land's Edge Enterprises, Inc., and Land's Edge Enterprises, Inc., Appellants.**

No. 90–5175.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 27, 1991.

Decided Nov. 1, 1991.

Marshall E. Anders, Stroudsburg, Pa., with whom Gerald F. Ivey, Washington, D.C., was on the brief, for appellants.

W. Mark Nebeker, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., and Rebecca J. Holtz, Attorney, Office of General Counsel, U.S. Dept. of Housing and Urban Development, Washington, D.C., were on the brief, for appellee.

Before MIKVA, Chief Judge, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The appellants, Gerald Gay and Land's Edge Enterprises, Inc. ("Land's Edge"), seek reversal of a district court order en-

forcing an administrative subpoena on the grounds that (1) the district court and this court lack subject-matter jurisdiction because venue properly lies only in the Middle District of Pennsylvania and (2) Gay's fifth amendment privilege protects him from complying with the subpoena. For the following reasons, we affirm the district court's order.

According to the appellee, in November 1988, the Interstate Land Sales Registration Division of the United States Department of Housing and Urban Development (the Division) received three consumer complaints regarding sales of real property in Monroe County, Pennsylvania, by Land's Edge d/b/a Old Coach Builders. On January 17, 1989, the Division sent a letter to Gay, president of Land's Edge, requesting that he complete an enclosed questionnaire to enable the Division to determine Land's Edge's status under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701 *et seq.*, ("the Act"). The Act requires that developers selling lots in interstate commerce register with the Division and prohibits fraudulent practices in such sales. By letter dated February 15, 1989, Marshall E. Anders, a lawyer representing Land's Edge, advised the Division that his client was not a developer within the scope of the Act and that therefore the Division had no jurisdiction over Land's Edge and the questionnaire would not be completed.

On August 18, 1989, the Division issued a subpoena duces tecum et subpoena ad testificandum directing Gay to produce specified documents by September 29, 1989, at the Division's Washington, D.C., office and to appear before a Division investigator at 10:00 a.m. on October 26, 1989 at the same location. The subpoena was served by certified mail on August 25, 1989.

Anders responded to the subpoena in a letter dated September 19, 1989, advising the Division the appellants would produce many of the requested documents but would be unable to do so until some time between the due date and the date set for the hearing. In response to that letter, which did not contest the location of the hearing in Washington, the Division officially changed the due date for the documents to October 13, 1989, and sent a detailed letter to Anders explaining the specific document requests.

On October 16, 1989, the Division wrote a letter to Anders informing him that the documents, as yet unproduced, were overdue. On October 20, 1989, Anders responded with a letter setting forth his positions regarding the individual subpoena requests and concluding: "I would also advise that Mr. Gay has a problem appearing on October 26, 1989 and until such time as the question of the information to be supplied by the subpoena is resolved, I see no need for him to appear, especially in light of the fact that he will be taking the Fifth Amendment." Nevertheless, Gay did appear at the Division's Washington office on October 26, 1989. He was accompanied by Anders and invoked his fifth amendment privilege in response to almost every question asked him. Following that proceeding, on October 30, 1989, Anders again wrote the Division, repeating his positions on the subpoena requests.

On April 6, 1990, the appellee filed a motion for an order requiring compliance with the subpoena in the United States District Court for the District of Columbia. By order filed May 25, 1990, the district court granted the motion. That order required that

(1) "[o]n or before Monday, June 18, 1990," Gay "produce and deliver ... all books, papers, correspondence, memoranda and other records and documents described in the Secretary's administrative subpoena,"

(2) Gay appear at the Division's Washington office on Wednesday, July 18, 1990, "to specifically answer under oath the questions attached as Attachment A to this Order, that were posed to Mr. Gay on October 26, 1989, which this Court deems to be innocuous and to which no threat of self-incrimination is evident,"

(3) Gay "as corporate custodian, shall also answer under oath the questions concerning the identification and authentification of the subpoenaed corporate

records and questions posed to him on October 26, 1989, concerning the corporate entities, which this Court deems to be innocuous on their face and do not appear to request information that would tend to incriminate Mr. Gay personally or to link Mr. Gay personally to any criminal violation, more specifically described as those questions found in the Transcript (Exh. K to Declaration of Roger G. Henderson) commencing on page 11, line 8 through page 79, line 3, relating to the corporations ... and the documents requested in the subpoena pertaining to such corporations,"

(4) Gay "answer such additional questions at the retaking of his testimony relating to the subpoenaed documents which were not asked of him on October 26, 1989 and may assert his Fifth Amendment privilege only in response to individual questions which may tend to incriminate him personally," and

(5) if Gay intended to invoke his fifth amendment privilege as to "any of the previously identified questions," he provide to the court and to the Division, before June 18, 1990, a "written statement under oath, explaining why a response to an individual question might tend to incriminate him."

Gay filed an appeal of that order and obtained from this court a stay of enforcement pending disposition of the appeal. For the following reasons, we affirm the district court's order.

## I.

At the outset, we consider a matter not raised by the parties, namely, whether the enforcement order is final and appealable under 28 U.S.C. § 1291. Because that issue is jurisdictional, we must address it before reaching the merits of the appeal. *See IAM Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.,* 789 F.2d 21, 24 n. 4 (D.C.Cir.) (citing *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981), *cert. denied,* 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986).

In a succession of decisions, the United States Supreme Court has held that a district court's ruling on a subpoena's validity is not enforceable unless and until the subpoenaed party defies an enforcement order and is cited for contempt. *See, e.g., United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *Alexander v. United States,* 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906). Under this general rule, it is only after entry of contempt that the underlying discovery dispute becomes "ripe for appellate review." *Ryan,* 402 U.S. at 532, 91 S.Ct. at 1582; *see also Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 377, 101 S.Ct. 669, 675, 66 L.Ed.2d 571 (1981). The rationale for this rule of ripeness was explained in *Ryan:*

> [W]e have consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal.

402 U.S. at 532–33, 91 S.Ct. at 1582. Nevertheless, the rule is subject to certain exceptions, among them appeals involving administrative subpoenas.[1]

---

1. The *Ryan* Court observed in addition that the rule is inapplicable to "the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims," 402 U.S. at 533, 91 S.Ct. at 1582, citing the following examples: (1) "denial of a motion for the return of seized property, where there is no criminal prosecution pending against the movant" because denial of immediate review "would mean that the Government might indefinitely retain the property without any opportunity for the movant to appeal his right to possession," *id.* (citing *DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962)), and (2) "an order directing a third party to produce exhibits which were the property of appellant and, he claimed, immune from production" because denial of review "would have left [the appellant] 'powerless to avert the mischief of the order,'" *id.* (quoting *Perlman v. United States,* 247 U.S. 7, 12–13, 38 S.Ct. 417, 419–20, 62 L.Ed. 950 (1918)).

■ Since the late nineteenth century, the Supreme Court has repeatedly found reviewable appeals from orders upholding administrative subpoenas. *See, e.g., Reisman v. Caplin,* 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964); *Ellis v. ICC,* 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036 (1915); *Harriman v. ICC,* 211 U.S. 407, 29 S.Ct. 115, 53 L.Ed. 253 (1908); *ICC v. Baird,* 194 U.S. 25, 24 S.Ct. 563, 48 L.Ed. 860 (1904); *ICC v. Brimson,* 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894).[2] In *Ellis v. ICC,* 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036 (1915), the Court explained the reasons for distinguishing between judicial and administrative subpoenas:

> This is an appeal from an order of the district court, made upon a petition of the appellee, the Interstate Commerce Commission, filed under the act to regulate commerce, § 12, c. 104, 24 Stat. 379, 383. The order directs the appellant to answer certain questions propounded and to produce certain documents called for by the appellee. There is no doubt that this appeal lies. The order is not like one made to a witness before an examiner or on the stand in the course of a proceeding *inter alios* in court.... It is the end of a proceeding begun against the witness.

237 U.S. at 442, 35 S.Ct. at 646 (citations omitted). In *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), the Court elaborated on the distinction drawn in *Ellis:*

> One class of cases dealing with the duty of witnesses to testify presents differentiating circumstances. These cases have arisen under § 12 of the Interstate Commerce Act, whereby a proceeding may be brought in the district court to compel testimony from persons who have refused to make disclosures before the Interstate Commerce Commission. In these cases the orders of the district court directing the witness to answer have been held final and reviewable.... Such cases were duly considered in the *Alexander* case, and deemed to rest 'on statutory provisions which do not apply

to the proceedings at bar, and, while there may be resemblances to the latter, there are also differences.' 201 U.S. at page 121, 26 S.Ct. at page 358, 50 L.Ed. 686. The differences were thought controlling. Appeal from an order under § 12 was again here in the *Ellis* case, *supra,* fully argued in the briefs, and again differentiated from a situation like that in the *Alexander* case. 'No doubt' was felt that an appeal lay from the district court's direction to testify. 'It is the end of a proceeding begun against the witness'—was the pithy expression for this type of case. 237 U.S. at page 442, 35 S.Ct. at page 646, 59 L.Ed. 1036. And it is a sufficient justification for treating these controversies differently from those arising out of court proceedings unrelated to any administrative agency. The doctrine of finality is a phase of the distribution of authority within the judicial hierarchy. But a proceeding like that under § 12 of the Interstate Commerce Act may be deemed self-contained, so far as the judiciary is concerned—as much so as an independent suit in equity in which appeal will lie from an injunction without the necessity of waiting for disobedience. After the court has ordered a recusant witness to testify before the Commission, there remains nothing for it to do. Not only is this true with respect to the particular witness whose testimony is sought; there is not, as in the case of a grand jury or trial, any further judicial inquiry which would be halted were the offending witness permitted to appeal. The proceeding before the district court is not ancillary to any judicial proceeding. So far as the court is concerned, it is complete in itself.

309 U.S. at 329–30, 60 S.Ct. at 543 (citations and footnote omitted).[3]

While the *Cobbledick* Court discussed only proceedings before the Interstate Commerce Commission, its reasoning supports immediate review of orders enforcing subpoenas issued by other agencies as well and such has been the rule. *See Reisman*

---

**2.** We previously recognized this distinction in *Clarke v. FTC,* 128 F.2d 542, 543 (D.C.Cir.1942).

**3.** In *Cobbledick* the order at issue, denying a motion to quash a grand jury subpoena, was not final or appealable.

*v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964) (district court order compelling compliance with IRS subpoena is appealable); *FTC v. Texaco, Inc.*, 555 F.2d 862, 873 n. 21 (D.C.Cir.) ("it is settled that an order of a district court granting or denying an agency's petition for enforcement of a subpoena is final and appealable"), *cert. denied sub nom. Standard Oil Co. v. FTC*, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977); *Application of Colton*, 291 F.2d 487 (2d Cir.1961) (denial of motion to quash IRS summons appealable); *O'Connor v. O'Connell*, 253 F.2d 365 (1st Cir.1958) (order enforcing IRS subpoena appealable), *cited in Reisman*, 375 U.S. at 449, 84 S.Ct. at 513; *Wilmot v. Doyle*, 403 F.2d 811, 814 n. 5 (9th Cir.1968) (order enforcing NLRB subpoena appealable); *see generally* 9 *Moore's Federal Practice* ¶ 110.13[2], at 133–35 (2d ed. 1988). Accordingly, we hold that the district court's order enforcing the Division subpoena is a final order ripe for review and we therefore have jurisdiction to resolve the appellants' challenge to that order.[4]

## II.

■ The appellants first assert that "the Court of proper jurisdiction and venue to enforce this subpoena, if any, is the United States District Court for the Middle District of Pennsylvania and the matter should be transferred there pursuant to 28 U.S.C. Section 1404(a)." Appellants' Brief at 10. We find transfer unwarranted for the following reasons.

Venue of the enforcement proceeding is governed by 15 U.S.C. § 1714(d), which provides:

> Contempt; court order requiring attendance and testimony of witnesses; jurisdiction
>
> (d) In case of contumacy by, or refusal to obey a subpena issued to, any person, *the Secretary may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on*, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memorandums, and other records and documents. And such court may issue an order requiring such person to appear before the Secretary or any officer designated by the Secretary, there to produce records, if so ordered, or to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof. All process in any such case may be served in the judicial district whereof such person is an inhabitant or wherever he may be found.

(Emphasis added). Applying this provision, the district court concluded:

> This Court has jurisdiction and venue over this matter pursuant to 15 U.S.C. 1714(d). Venue is appropriate in Washington, D.C. because that is where the agency is located, that is where all correspondence pertaining to the investigation has emanated from, and that is where the subpoena hearing was held on October 26, 1989.

Appendix at 4. The appellants challenge this ruling on the ground that the investigation here must necessarily be conducted not in Washington, D.C., but in the Middle District of Pennsylvania where the real property involved is located. Without deciding where the "investigation" has been or will be carried out, we affirm the district court's ruling on the alternative ground that venue lies in the District of Columbia under the Act because this was the site of the October 26, 1989, proceeding.

The Act expressly authorizes an enforcement proceeding in "any court of the Unit-

---

**4.** This holding is not inconsistent with *Office of Thrift Supervision, Department of the Treasury v. Dobbs*, 931 F.2d 956 (D.C.Cir.1991), in which we stated: "[An] enforcement order is an appealable final order normally tested on appeal after noncompliance and contempt. *FTC v. Texaco, Inc.*, 555 F.2d 862, 873 n. 21 (D.C.Cir.), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977)." *Id.* at 957. While appeal after noncompliance and contempt may be the *norm*, it is not prerequisite to review in the administrative context as the *Dobbs* court recognized when it characterized an enforcement order as "an appealable final order" and cited *FTC v. Texaco, Inc.*

**1498**

ed States within the jurisdiction of which such investigation *or proceeding* is carried on." 15 U.S.C. § 1714(d) (emphasis added). The subpoena Gay challenges required his presence at a proceeding in the Division's Washington office on October 26, 1989, and Gay attended that proceeding without objecting to or attempting to change the location.[5] It is his responses to questions posed at that hearing that are primarily at issue in this enforcement action. Because the proceeding was "carried on" in Washington, the action was properly brought in this district under the express statutory language and was within the district court's subject-matter jurisdiction.

### III.

■ Next, the appellants challenge the provisions in the district court's order requiring that Gay either testify regarding matters specified in the order or submit in advance both to the Court and to the Division a written explanation of why such testimony would violate his fifth amendment rights. The appellants contend this requirement itself violates the fifth amendment because it "is tantamount to requesting a signed confession under oath from a criminal Defendant," Appellants' Brief at 14, especially given the participation by Department of Justice lawyers in the enforcement proceeding. We disagree.

First, we note that, contrary to the appellants' suggestion, participation in the enforcement proceeding by Department of Justice lawyers does not transform the investigation into a criminal proceeding. *See* 28 U.S.C. § 547(2) (requiring that "each United States Attorney, within his district, shall ... prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned"). More importantly, we find no fault with the district judge's requirement that Gay explain why his fifth amendment

privilege might apply to an individual question. Because the judge perceived the questions cited in the order to be "innocuous on their face," it was appropriate, if not necessary, to request individual explanations. *See Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981), *and Martin–Trigona v. Gouletas*, 634 F.2d 354, 361 (7th Cir.), *cert. denied*, 449 U.S. 1025, 101 S.Ct. 593, 66 L.Ed.2d 486 (1980) (approving similar procedures).[6] Gay should be able to couch his explanations in sufficiently hypothetical language to avoid any actual incrimination.[7]

For the preceding reasons, the judgment of the district court is

*Affirmed.*

---

**5.** HUD regulations provide that "[a] subpoenaed person may petition the Administrator to modify or withdraw a subpoena by filing the petition within ten days after service of the subpoena." 24 C.F.R. 1720.70(b) (1991).

**6.** We are not certain that the explanations need or should be submitted to the Division as well as to the court. The appellants may wish to request that the district court modify its order in this respect.

**7.** In fact, he has already demonstrated his ability to do so. *See* Appellants' Brief at 15 ("should the U.S. Attorney find that corporations, through their agents, have committed criminal acts, the very admission by Appellant, Gerald Gay, that he is a corporate officer, would be incriminating").