### In re ORAL TESTIMONY OF A WITNESS SUBPOENAED PURSUANT TO CIVIL INVESTIGATIVE DEMAND NO. 98–19.

### No. 4:98MC5.

United States District Court,
E.D. Virginia,
Newport News Division.

July 29, 1998.

---

198

Craig P. Wittman, Office of United States Attorney, Norfolk, VA.

David Sadoff, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC.

Stanley A. Freeman, Harold Damelin, Powers, Pyles, Sutter & Verville, P.C., Washington, DC.

James J. Graham, Edwin Louis Fountain, Jones, Day, Reavis & Poque, Washington, DC.

John G. De Gooyer, Hopkins & Sutter, Washington, DC.

## AMENDED OPINION AND ORDER

MORGAN, District Judge.

This matter is before the Court on a series of motions including the witness' motion to file motions under seal, motion to vacate order and objections to Magistrate Judge's report and recommendation and the target's motion to file motions under seal, motion to intervene, and further objections. A hearing was held on Friday, June 12, 1998 and the Court ruled from the bench on this matter. This opinion will further explain the rationale for the Court's ruling.

### Facts

On or about March 1995, the Defense Contract Audit Agency ("DCAA") began a post-award audit of a contract between the Government and the target of the subsequent investigation. The target is also the intervenor in this case. DCAA is a component of the Department of Defense. In connection with its post-award audit and pursuant to its limited statutory authority, DCAA issued a document request on March 21, 1995.

At the same time that DCAA was conducting its post-award audit, the Department of Defense Inspector General ("IG"), DOJ, the Naval Criminal Investigative Service ("NCIS") and DCAA began a civil investigation with respect to substantially the same matters which were the subject of DCAA's post-award audit. On May 29, 1996, the IG issued a subpoena, pursuant to its subpoena power, requesting documents in connection with this civil investigation.[1] The documents

1. Attached to the subpoena was a three-page document containing the following language:
 4. ROUTINE USES OF THE INFORMATION:
 Information you give may be used and disseminated in the routine operation of [the Department of Defense], including criminal, civil, and administrative proceedings. Routine uses include, but are not limited to, the following categories:
 (a) In any case in which there is an indication of a violation or a potential violation of law, whether civil, criminal or regulatory in nature, the record in question may be disseminated to the appropriate federal, state, local or foreign agency charged with the responsibility for investigating or prosecuting or implementing such law;
 (b) In the course of investigating the potential or actual violation of any law, whether civil, criminal, or regulatory in nature, or during the course of a trial, or hearing or the preparation for trial or hearing for such violation, a record may be disseminated to a federal, state, local or foreign agency, or to an individual organization, if there is reason to believe that such agency, individual, or organization possesses information relating to the investigation, trial, or hearing and the dissemination is reasonably necessary to elicit such information or to obtain the cooperation of a witness or an informant;

sought were many of the same documents and information previously sought by DCAA. 38,000 pages of documents were produced in response to the IG Subpoena in August 1996.

On approximately February 23, 1998, DOJ notified the target of and served Civil Investigative Demands ("CID") on ten present and former officers and employees of the target. One such CID went to the witness. On April 9, 1998, DCAA issued a final audit report alleging that the target overcharged the Government and recommending a price adjustment on the contract. Among the documents attached to DCAA's final audit report were documents produced in response to the IG Subpoena.

The CID served on the witness requested that the witness produce documents by March 30, 1998 and appear for a deposition on April 3, 1998. The witness requested the target to assist in preparing for the deposition as the witness anticipated being questioned concerning complicated transactions.

The CID was authorized pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3733. The CID designated an investigator for the NCIS as an FCA Deputy Custodian. An FCA Custodian is responsible under the statute for the maintenance of the materials gathered by the CID.[2] The CID lists a DOJ attorney and an Assistant United States Attorney as the false claims law co-investigators. Further, the CID stated that the witness had "the right to be accompanied by an attorney and other personal representative at the oral examination."

On April 21, 1998,[3] the witness, who was the first witness scheduled, appeared at the CID deposition accompanied by his personal attorney and two of the target's outside counsel. All four false claims law co-investigators named in the internal memo were present for the Government. At the outset of the deposition, the witness' counsel attempted to resolve the witness' entitlement to have the target's counsel present as the witness' rep-

resentatives under the statute. The Government argued that the target's counsel was not entitled to be present and sought to take the witness' testimony on that issue outside the presence of the target's counsel. The witness declined and the Government declared the deposition concluded.

Later in the day, the witness' counsel was notified that the matter would be presented to Magistrate Judge James E. Bradberry in Newport News at 3:00 p.m. that same day. The Government filed a Petition For An Order to Enforce Civil Investigative Demand in this Court and served it on the witness' counsel sixty-five minutes before the hearing. The Petition sought to require the witness to provide oral testimony as required by the CID and to exclude the target's counsel during the taking of oral testimony. On April 23, 1998, the Magistrate Judge issued an order granting the Government's petition and excluding the target's counsel from attendance at the CID deposition.

### Procedural History

On April 21, 1998, the Magistrate Judge held a hearing. On April 23, 1998, the Magistrate Judge issued a published order granting the Government's petition. On May 7, 1998, the witness filed a motion to file motions under seal, a motion to vacate order and objections to what they classified as the Magistrate Judge's report and recommendation. On May 20, 1998, the Government filed a memorandum in opposition to the motion to vacate order and the objections. On May 29, 1998, the witness filed a reply memorandum.

On May 7, 1998, the target filed a motion to file pleadings under seal and a motion to intervene in order to object to the Magistrate Judge's order. On May 20, 1998, the Government filed a memorandum in opposition to the motion to intervene and to the objections. On May 29, 1998, the target filed a rebuttal brief.

---

**2.** According to an internal Government memo, the United States Attorney General also authorized an auditor for DCAA to serve as an FCA Deputy Custodian, and named both of these individuals as additional false claims law investigators.

**3.** The deposition was originally scheduled on April 3, 1998. However, the deposition was rescheduled to April 21, 1998 to accommodate the witness.

## A. Motions to File Motions Under Seal

The statute granting authority to issue a CID notes that CID material or information is protected from disclosure. *See* 31 U.S.C. § 3733(b). Moreover, CID material is exempt from disclosure under the Freedom of Information Act. *See* 31 U.S.C. § 3733(k). A Congressional intent to keep CID proceedings and material confidential can be inferred.

No parties have filed any opposition to the motions to file motions under seal. Further, by order dated April 23, 1998, the entire file in this case was placed under seal. Therefore, the Court **NOTES** that it is unnecessary to order each individual pleading to be sealed as that is automatically done when an entire file is placed under seal.

## B. Motion to Vacate Order

### Summary of Arguments

The witness basically contends that the Magistrate Judge's order was entered without jurisdiction. The witness asserts the petition is a dispositive motion which requires authorization from a district court judge. The case was not referred by a specific order with instructions from a district court judge. Further, the parties have not consented to having the matter before a magistrate judge. Therefore, the witness argues that the Magistrate Judge had no authority to issue the order.

The Government contends that the petition is not dispositive. Therefore, the Magistrate Judge can hear the issue with permission from a district court judge. While no specific authorization was obtained, the Government asserts that the 1991 Standing Order of this Court gave the Magistrate Judge authority to hear the case.

### Analysis

The jurisdiction and powers of United States Magistrate Judges are set forth in 28 U.S.C. § 636. That statute confers the following jurisdiction: 1) pursuant to designation by a district judge, the power to hear and determine certain non-dispositive pretrial matters,[4] subject to reconsideration by the district judge under a clearly erroneous/contrary to law standard, *see* 28 U.S.C. § 636(b)(1)(A); 2) pursuant to designation by a district judge, the power to hear, propose findings and recommend disposition of the dispositive matters listed in § 636(b)(1)(A) as well as "applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitioner's challenging conditions of confinement," subject to *de novo* review by the district judge, 28 U.S.C. § 636(b)(1)(B) and (C); 3) pursuant to designation by a district judge, the power to serve as a special master, *see* 28 U.S.C. § 636(b)(2); and 4) pursuant to designation by a district judge and with the consent of the parties, the power to conduct any and all proceedings in civil matters including entry of judgment, *see* 28 U.S.C. § 636(c).[5]

Federal Rule of Civil Procedure 72(a) implements 28 U.S.C. § 636(b)(1)(A), authorizing magistrate judges to hear and decide non-dispositive matters when a matter is referred to a magistrate judge from a district judge. Federal Rule of Civil Procedure 72(b) implements the hearing of dispositive matters. Rule 72(b) and 28 U.S.C. 636(b)(1)(A) authorize a magistrate judge to conduct an evidentiary hearing and to "enter into the record a recommendation for disposition" that is reviewed by a district court judge *de novo*. If the matters are not properly referred, then the magistrate judge lacks the authority to enter orders in the matter. *See Neals v. Norwood,* 59 F.3d 530, 532 (5th Cir.1995) ("When a magistrate judge enters judgment ..., absence of the appropriate consent and reference or special designation orders results in a lack of jurisdiction ....."); *Mendes Junior International Co. v.*

---

4. The statute excepts certain dispositive motions from this grant of authority, namely "a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class ac-

tion, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action."

5. 28 U.S.C. § 636(c) cannot apply in this case because the parties did not consent.

*M/V SOKAI MARU,* 978 F.2d 920, 922 (5th Cir.1992).

However, this Court has filed a 1991 Standing Order providing magistrate judges with the required authorization to hear non-dispositive matters, pursuant to 28 U.S.C. § 636(b)(1)(A). The Standing Order requires that a district judge specifically direct a magistrate judge to handle dispositive matters, listing the eight categories found in 28 U.S.C. § 636(b)(1)(A). That Standing Order is still in effect.

■ This Court **FINDS** that a CID is an administrative subpoena. *See United States v. Markwood,* 48 F.3d 969, 975–76 (6th Cir. 1995) (holding that a CID is an administrative subpoena because the Department of Justice is an administrative agency and because the analogous antitrust CID is an administrative subpoena); *see also FTC v. Invention Submission Corp.,* 965 F.2d 1086, 1087 (D.C.Cir.1992), *cert. denied,* 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993) (FTC CID); *United States v. Witmer,* 835 F.Supp. 208, 212 (M.D.Pa.1993), *aff'd,* 30 F.3d 1489 (3d Cir.1994) (FCA CID).

The question then concerns whether this administrative subpoena is dispositive. The Fourth Circuit has not addressed this exact issue. However, the Third Circuit has done so. In *National Labor Relations Board v. Frazier,* 966 F.2d 812, 815 (3rd Cir.1992), the Third Circuit found that a district court proceeding instituted for the sole reason of determining a motion to quash an agency subpoena was an independent proceeding from the ongoing administrative proceeding. Further, the *Frazier* Court held that because a decision on the motion to quash would effectively end the litigation in the district court, the motion was dispositive. *See id.* at 818. In reaching that conclusion, the *Frazier* Court reasoned that the list in 28 U.S.C. § 636(b)(1)(A) was not exhaustive and that the motion to quash in the context of an administrative subpoena was analogous to a motion to dismiss. *See id.* at 817–18.

While the Fourth Circuit has not addressed this issue, it has determined that administrative subpoenas are treated differently than other subpoenas in that they are final, appealable orders. In *Reich v. Nation-*

*al Engineering & Contracting Co.,* 13 F.3d 93, 95 (4th Cir.1993), the Fourth Circuit began by noting "[o]rders enforcing subpoenas issued in connection with civil and criminal actions, or with grand jury proceedings, are normally not considered final." (citing *United States v. Ryan,* 402 U.S. 530, 532–33, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States,* 309 U.S. 323, 328, 60 S.Ct. 540, 84 L.Ed. 783 (1940) (other citations omitted)). However, the *Reich* Court went on to note that "the appealability of district court orders enforcing subpoenas issued by government agencies in connection with administrative investigations ... has been regarded differently." *Id.* (citing *Ellis v. ICC,* 237 U.S. 434, 442, 35 S.Ct. 645, 59 L.Ed. 1036 (1915) (holding order was final because the order was "the end of a proceeding begun against the witness.")). The *Reich* Court also noted that "every court of appeals to address the appealability of orders enforcing subpoenas in various types of administrative investigations has determined that these orders are immediately appealable." *See id.* at 96 (citing *Kemp v. Gay,* 947 F.2d 1493, 1495–97 (D.C.Cir.1991) (Department of Housing and Urban Development investigation); *Dole v. Local Union 375, Plumbers Int'l Union,* 921 F.2d 969, 971–72 (9th Cir.1990) (Department of Labor investigation), *cert. denied,* 502 U.S. 868, 112 S.Ct. 197, 116 L.Ed.2d 157 (1991); *EEOC v. University of New Mexico,* 504 F.2d 1296, 1300 (10th Cir.1974) (EEOC investigation); *Shea v. Office of Thrift Supervision,* 934 F.2d 41, 46 (3d Cir.1991)). The *Reich* Court reasoned that unlike a civil, criminal, and grand jury proceeding where no citation of contempt has been issued, in administrative proceedings, there is no ongoing judicial proceeding for an appeal to delay. *See id.* Once the court decides the subpoena issue, no other matters are pending before the court. *See id.* Therefore, in the context of enforcing an OSHA subpoena, the *Reich* Court held that the issue was a final order and appealable. *See id.* at 97.

■ The idea that an order concerning an administrative subpoena is final and appealable lends weight to the conclusion that that same motion is dispositive. Therefore, the Court **FINDS** that the CID is an administra-

tive subpoena and a motion to enforce such subpoena is a dispositive motion. Therefore, the Court will **CONSTRUE** the Magistrate Judge's order enforcing the CID and refusing to allow the target's counsel to attend as a report and recommendation and review the report and recommendation using the *de novo* standard.

## C. The Witness' Objections to Magistrate Judge's Report and Recommendation

### Standard of Review

 The Federal Magistrate's Act provides that a "judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *United States v. George*, 971 F.2d 1113, 1117 (4th Cir.1992). In the absence of any objection by the parties, the district court is not obligated to make any explanation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140, 151, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ("There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed."); *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir.1991) ("[T]he district court is accorded considerable discretion with respect to the treatment of unchallenged magistrate reports. In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate."). Where a court conducts a *de novo* review, the district court should reexamine all relevant evidence previously reviewed by the magistrate judge to determine whether any particular findings of fact raised in the objections are supported by "substantial evidence." 42 U.S.C. § 405(g); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987); *see also Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In those circumstances, the magistrate judge's report and recommendation carries no presumptive weight, and the district court may accept, reject or modify the report, in whole or in part, and may recommit the matter to the magistrate judge with instructions. *See*

*Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

### Summary of Magistrate Judge's Report and Recommendation

The Magistrate Judge began by noting the purpose of the FCA "is to enhance the Government's ability to recover losses sustained as a result of fraud against the Government." He then explored the legislative history behind the statute in order to interpret whether the target's counsel were properly considered "other representatives" of the witness. He noted that the statute was meant to be administered as the anti-trust laws were. However, the anti-trust laws providing for CIDs do not contain the language "any other representative" which is the subject of this suit. Therefore, the Magistrate Judge noted that the Court must interpret legislative intent.

After reviewing the reasoning behind CIDs, the Magistrate Judge analogized CIDs to grand jury investigations. The Magistrate Judge then noted that the statute itself requires the false claims law investigators to exclude all persons except:

> the person giving testimony, the attorney for and any other representative of the person giving the testimony, the attorney for the Government, any person who may be agreed upon by the attorney for the Government and the person giving the testimony, the officer before whom the testimony is to be taken, and any stenographer taking such testimony . . .

31 U.S.C. § 3733(h)(2). The Magistrate Judge reasoned that allowing counsel for the target of the investigation to be present would "require the Court to ignore congressional concerns, disregard the legislative history, and eviscerate the statute." Therefore, the Magistrate Judge granted the petition allowing the Government to "examine the former employee of [the target] who is the subject of the CID out of the presence of outside counsel retained to represent the interests of [the target] . . . ."

### Summary of Arguments

The witness asserts two issues for review by this Court. For the first time, the wit-

ness asserts that the two FCA Deputy Custodians should not be present at the hearing, as they are not any of the persons allowed to be present by statute. Second, the witness contends that the target's counsel is validly considered "any other representative" of the witness, and therefore, they should be allowed to attend the CID.

The Government first responds that it is too late to assert any claim that the FCA Deputy Custodians should not be present because the witness had previous opportunities to voice such objections. Further, the Government asserts that the FCA Deputy Custodians were properly present as false claims law investigators. Second, the Government asserts that the target's counsel is not representing the witness but their own interests, and therefore should be excluded.

### Analysis

#### 1. Exclusion of the FCA Deputy Custodians

First, there is the issue of whether the FCA Deputy Custodians can properly be present at the CID. 31 U.S.C. § 3733(h)(2) states:

> The false claims law investigator conducting the examination shall exclude from the place where the examination is held all persons except the person giving testimony, the attorney for and any other representative of the person giving testimony, the attorney for the Government, any person who may be agreed upon by the attorney for the Government and the person giving testimony, the officer before whom the testimony is to be taken, and any stenographer taking such testimony.

Therefore, it seems clear that false claims law investigators can be present.

■ The witness argues that the FCA Deputy Custodians are not false claims law investigators and the witness has not consented to their presence. However, the Court **NOTES** that the Government's internal memo names the FCA Deputy Custodians as false claims law investigators. Further, the Court **NOTES** that the Government has represented that it will amend the CID

to reflect that designation. The Court is also aware of the Government's need to have the FCA Deputy Custodians present at the CID deposition as they are the most familiar with the plethora of documents relevant to this investigation. However, the Court is concerned about the Government's seemingly contradictory positions in objecting to the witness' chosen representatives on the one hand and requesting that more Government representatives than those designated in the CID be present on the other hand. Based on all these considerations, the Court **DENIES** the witness' motion in part and **GRANTS** it in part. The Court **ORDERS** the Government to amend the CID to reflect that the FCA Deputy Custodians are also designated as false claims law investigators. Further, the Court **ORDERS** that the Government is allowed to have only one of the FCA Deputy Custodians present at any one time at the CID deposition, though the same FCA Deputy Custodian is not required to be the one present throughout the hearing.

#### 2. Exclusion of Target's Counsel

First of all, the Court notes that this is an issue of first impression. Second, the statutory language allows a witness to have present at the CID deposition "an attorney for and any other representative of the person giving testimony." Beyond limiting those present for the witness to these two categories and noting that the representative must be one of the witness', the statute itself places no restrictions on the type of representative that may attend.

■ The target's counsel consistently has represented themselves to this Court as counsel for the target, not as counsel for the witness.[6] The underlying goal of an investigation is an attempt to determine if the target has committed any wrongdoing. Further, every witness in an investigation can potentially provide information of such wrongdoing. If the target's counsel attempted to represent both the target and the witness, then a potential conflict of interest could arise. Therefore, the target's counsel is properly representing itself as counsel for

6. The Court notes that it believes that such representation to the Court is correct.

the target, and not as a representative of the witness. Therefore, counsel for the target cannot recast their role as a representative for the person giving testimony under the statute. Accordingly, under the facts of this proceeding, the statute does not authorize counsel for the target to be present at the CID deposition.

For this reason, the Court **AFFIRMS** the Magistrate Judge's report and recommendation enforcing the petition and disallowing the presence of counsel for the target at the CID deposition. However, the Court **NOTES** that it is not finding that other employees of the target, other than the target's counsel, are barred from serving as representatives of the witness. Further, the Court **FINDS** that an objection to an employee, other than the target's counsel, which is made merely because the potential representative is an employee of the target is not a sufficient reason to exclude the employees' presence as a representative of the witness.

### D. Motion to Intervene and Further Objections

#### Summary of Arguments

The target asserts that it should be allowed to intervene as it has an interest in the subject matter of this proceeding, namely making sure that information is not wrongly disseminated to unauthorized agencies. Further, it asserts that the protection of that interest would be impaired without intervention and that the witness cannot adequately represent that interest.

The Government responds that the target has no legitimate interest in this proceeding or any legitimate interest is outweighed by the Government's interest of holding these proceedings confidentially. In support of that argument, the Government first asserts that the target's "interest" in disallowing incriminating evidence is not sufficient to create an interest justifying intervention. Second, the Government asserts that the target's "feigned concern about unauthorized disclosure of CID materials is wholly unsubstantiated and conjectural" and does not provide a basis for intervention. The Government asserts that its disclosure to DCAA was authorized and the target had previous notice of such. Further, the Government points out that, unlike IG subpoenaed information, documents provided through the FCA shall be held by a custodian. Such information is only available to false claims law investigators, and disclosed only "upon application by the Attorney General to a district court, and determination of 'substantial need' for the information." 31 U.S.C. 3733(i)(2)(C). Therefore, the Government asserts that the target is adequately protected. Third, the Government asserts that another adequate remedy is available to voice these concerns in that the target can and should file a motion to quash or institute a show cause proceeding. The Government argues that the presence of the target at the CID "will not effectively protect [the target's] described concerns." Finally, the Government argues that allowing the target counsel to be present would contradict the intent of the statute.

As to their objections, the target asserts that its counsel must be allowed to attend the CID in order to assure that information is not wrongfully disseminated between DOJ and DCAA, as DCAA cannot procure the information through its own statutory authority. The target asserts that information has already been wrongfully disclosed and shared, as seen by the documents attached to DCAA's final report. The target argues that its counsel's presence at the CID is the only way to stop this wrongful sharing of information or at a minimum to alert the target to what information is shared, allowing it to prepare a defense. Further, the target asks the Court to find that it has the right to respond to any motion filed by the Government pursuant to 31 U.S.C. § 3733(i)(2)(C) to disclose CID material to DCAA or the Navy, and to be present and heard at any hearing on any such motion. Finally, the target points out that the Government has not objected to its corporate counsel's presence in "numerous" other CID investigations.

#### Standard of Review

Federal Rule of Civil Procedure 24(a)(2) governs a party's right to intervene. That Rule allows intervention of right when:

the applicant claims an interest relating to the property or transaction which is the

subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

▮ The Fourth Circuit has interpreted Rule 24(a)(2) to "entitle an applicant to intervention of right if the applicant can demonstrate: (1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir.1991) (citations omitted); *see also Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); *Patterson v. Shumate*, 1990 WL 122240 at *1, 912 F.2d 463 (4th Cir.1990) (unpublished disposition). However, intervention in a subpoena enforcement action is "permissive only, not mandatory." *Donaldson v. United States*, 400 U.S. 517, 529, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 749 n. 19, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984). The determination of whether a party should be allowed to intervene requires a court to balance the opposing equities. *See Donaldson*, 400 U.S. at 520, 91 S.Ct. 534. Along with the above requirements, the court can also consider such factors as whether the material is privileged and the interest of the agency requesting the material. *See id.* at 529–32, 91 S.Ct. 534.

▮ The *Teague* Court explained that the interest noted in the first requirement must be "a significantly protectable interest." *Teague*, 931 F.2d at 261 (citing *Donaldson v. U.S.*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580). The Fourth Circuit has found that a "significantly protectable interest" can be one held by a third-party even when the intervenor's interest "is contingent on the outcome of other litigation." *See id.* Further, the interest should be determined based on the pleadings and "not whether the applicant is likely to prevail on the merits." *Patterson*, 1990 WL 122240, at *2. However, a right to intervene is not established merely by "virtue of [a potential intervenor's] status as a co-Respondent and alleged alter ego in the administrative proceeding." *Fugazy v. Continental Corp. of Conn. v. NLRB*, 514 F.Supp. 718, 721 (E.D.N.Y.1981). "A putative intervenor must demonstrate an interest relating to the property which is the subject of the action; the mere assertion that the examination of third party records may unearth incriminating evidence is not sufficient to invoke Rule 24." *Id.* (citing *Donaldson*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580).

▮ As to the third requirement, the intervenor bears a minimal burden to demonstrate a lack of adequate representation. *See Teague*, 931 F.2d at 262 (citing *Trbovich*, 404 U.S. at 538 n. 10, 92 S.Ct. 630 (1972)).

### *Analysis*

▮ As to the target's argument that it should have a right to intervene in order to protect against the wrongful dissemination of information, the Court cannot find that the target's presence at the CID deposition will deter such sharing. Further, the Court **NOTES** that different procedures than those governing the DCAA's final audit or an IG Subpoena have been instituted under the FCA to protect against such an occurrence.[7] It does not follow that merely because sharing of information has occurred in the past concerning documents received in response

---

7. Under the FCA, documents gathered must be held by a "custodian," the documents shall only be available to false claims law investigators subject to specific exceptions, and the documents shall be disclosed to other government agencies only upon application by the Attorney General to a district court, and demonstration of "substantial need" for the information. *See* 31 U.S.C. § 3733(i)(2)(C). Congress specifically balanced the governmental and individual rights in the sharing of this information and noted:

such information could only be provided if the requesting agency, acting through the Department of Justice, obtained a court order upon a showing of substantial need. **This proceeding would be conducted ex parte.** The Committee feels that this protection will be adequate to ensure that only agencies with legitimate interests in fulfilling their most significant statutory responsibility would have access to the information.

S.Rep. No. 99–345, at 33–34 (1986). (emphasis added and citations omitted).

to an IG Subpoena, that such sharing will occur again in this context. This is especially true when notice was given that sharing would occur and the sharing was lawful. Albeit inefficient and potentially oppressive when four (4) Government agencies are investigating the same conduct, the Court **FINDS** that the FCA procedural safeguards are adequate to alleviate the concern about sharing. Therefore, the target has no significant protectable interest justifying intervention to prevent sharing.

The target further argues that its presence at the CID will allow it to be informed of what transpires at the CID deposition, including knowledge of what information is relayed. However, the Court **NOTES** that there is no restriction against a witness or a witness' representative relaying to the target the information discussed during the CID deposition. Therefore, this argument also cannot establish a significant protectable interest in favor of the target's intervention. This argument is inconsistent with the target's position that its outside counsel should be entitled to attend the CID deposition as the **witnesses' representative**.

Therefore, the Court **FINDS** that the target has not established a significant protectable interest sufficient to warrant intervention in this matter. Accordingly, the target's motion to intervene is **DENIED**. Because the target has no right to intervene in this action and because adequate safeguards are in place to guard against the sharing of information, the Court **DENIES** the target's request that the Court allow it to respond to any motion by the Government to disclose CID information.

The Clerk is **REQUESTED** to send copies of this order to all counsel of record.

It is so **ORDERED**.