# CIRCUIT COURT OF ALBEMARLE COUNTY

The Rector and Visitors
of the University of Virginia

v.

Kenneth T. Cuccinelli, II,
Attorney General of Virginia

August 30, 2010

Case No. CL10-398

BY JUDGE PAUL M. PEATROSS, JR.

This matter came before the Court on August 20, 2010, on the Petition to Set Aside Civil Investigative Demands issued to the University of Virginia by Respondent, Kenneth T. Cuccinelli, II, on April 23, 2010. A hearing was held on August 20, 2010, and the Court took the matter under advisement to review the legal authority cited.

*Background*

The Civil Investigative Demands attached as Exhibits 1 and 2 to the Petition are identical except one is issued to the University of Virginia and the other to the Rector and Visitors of the University of Virginia.

Pursuant to Article 19.1 of the Code of Virginia of 1950, as amended, known as the Virginia Fraud Against Taxpayers Act (FATA), the Attorney General shall investigate any violation of the Act. Section 8.01-216.4 of the Code of Virginia.

658

Violations of the Act include: Any person who:

> 1. Knowingly presents, or causes to be presented, to an officer or employee of the Commonwealth a false or fraudulent claim for payment or approval;
> 2. Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth;
> 3. Conspires to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid.

*Id.* § 8.01-216.3.

These are the violations alleged in the Civil Investigative Demands in Exhibits 1 and 2.

The Act authorizes the Attorney General to issue a civil investigative demand (CID) if he has "reason to believe that any person may be in possession, custody, or control of any documentary material or information relevant to a false claims law investigation. . . ." *Id.* § 8.01-216.10.

Section 8.01-216.11 of the Code sets forth contents and deadlines of each civil investigative demand. It states: "Each civil investigative demand issued under this article shall state the nature of the conduct constituting the alleged violation of a false claims law that is under investigation and the applicable provision of the law alleged to be violated."

The Act also contains definitions under § 8.01-216.2 of the Code. Pertinent to this Petition is the definition of "person." " 'Person' includes any natural person, corporation, firm, association, organization, partnership, limited liability company, business, or trust."

A "claim" is defined as "any request or demand ... for money or property ... if the Commonwealth provides any portion of the money or property that is requested or demanded, or if the Commonwealth will reimburse ... any portion of the money or property that is requested or demanded." *Id.* § 8.01-216.2.

A civil investigative demand (CID) is "an administrative subpoena." *In re Oral Testimony of a Witness Pursuant to Civil Investigative Demand No. 98-1,* 182 F.R.D. 196, 202 (E.D. Va. 1998).

## Issues Presented

1. Does the Attorney General have to allege a "reason to believe" that the University of Virginia is in possession of documentary material relevant to a false claims law investigation?

2. Has the Attorney General stated in the Civil Investigation Demands issued "the nature of the conduct constituting the alleged violation of the false claims law that is under investigation?"

3. Is the University of Virginia a "person" under the Act to whom a civil investigative demand may issue?

4. Would the issuance of a civil investigative demand by the Attorney General to the University of Virginia "chill" the academic freedom of professors like Dr. Mann?

5. What are funded grants/awards by the Commonwealth?

6. What is the scope of the civil investigative demands issued?

## Analysis

### 1. *Reason To Believe by Attorney General*

The Attorney General argues that the requirement of § 8.10-216.10 is a subjective standard. In other words, the Attorney General has unbridled discretion to say he believes the University does have relevant material and that the Court does not have the ability to review any requirement he has a "reason to believe" or not. The Court disagrees. In order for the Attorney General to have a "reason to believe," he has to have some objective basis to issue a civil investigative demand, which the Court has the power to review. This Court rules that the objective basis for the Attorney General to have a "reason to believe" has to be stated in the "nature of the conduct" requirement contained in § 8.01-216.11. Stating the "nature of the conduct" and the applicable law of the Act believed to be violated tells the Court if the Attorney General has "reason to believe."

### 2. *Nature of the Conduct Requirement*

In reviewing the Civil Investigative Demands, the Court notes the "applicable provision of the law alleged to be violated" is stated by reference to the statute. However, the nature of the conduct is not stated so that any reasonable person could glean what Dr. Mann did to violate the statute. The Attorney General says "the investigation relates to data and

other materials that Dr., Mann presented in seeking award/grants funded, in whole or in part, by the Commonwealth of Virginia or any of the agencies as well as data, materials and communications that Dr. Mann created, presented, or made in connection with or related to the following awards/grants (hereinafter the "Grants")." What the Attorney General suspects that Dr. Mann did that was false or fraudulent in obtaining funds from the Commonwealth is simply not stated. When the Court asked Mr. Russell where it was stated in his brief the "nature of the conduct" of Dr. Mann that was a violation of the statute, Mr. Russell referred the Court to the first 15 pages of his Brief in Opposition to Petition. The Court has read with care those pages and understands the controversy regarding Dr. Mann's work on the issue of global warming. However, it is not clear what he did that was misleading, false, or fraudulent in obtaining funds from the Commonwealth of Virginia.

### 3. *Is the University of Virginia a Person under the Statute?*

The University of Virginia claims it is not subject to the statute as a "person" to whom a civil investigative demand for materials may issue. It argues that the definition section of the statute omitted "State or political subdivision of a State" as a person under the statute. It says the University is an extension of the Commonwealth and is not bound by statutes of general application "unless named expressly or included by necessary implication." *Commonwealth, ex rel. Pross v. Board of Sup'rs of Spotsylvania*, 225 Va. 492, 494 (1983).

The Attorney General responds that the law states the Board of Visitors of the University of Virginia is a "corporation." Section 23-69 of the Code of Virginia states: "The board of visitors of the University of Virginia shall be and remain a corporation, under the style of 'the Rector and Visitors of the University of Virginia,' and shall have, in addition to its other powers, all the corporate powers given to corporations by the provisions of Title 13.1. . . ."

The University is a public institution. The University is controlled through a public corporation created for the purpose and is a public institution governed and controlled by the State. *Phillips v. Rector and Visitors of the University of Virginia*, 97 Va. 472 (1899). See also *United States v. Bly*, 510 F.3d 453 (4th Cir. 2007).

The Court finds that the University of Virginia is a corporation in the Commonwealth and is a "person" under the definitional section of the statute. Therefore, it is a proper subject of a civil investigative demand.

### 4. *Do CIDs Infringe Academic Freedom?*

The University of Virginia argues the Attorney General cannot evaluate that academic freedom unless (1) the interests of the government are strong and (2) the extent of intrusion carefully limited. *Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1275 (7th Cir. 1982). It says that four of the five grants listed in the CIDs are federal grants, which were not money paid by the Commonwealth of Virginia to Dr. Mann. It further says that the fifth grant listed was an internal grant awarded to Dr. Mann in 2001. Since the Virginia Fraud Against Taxpayers Act did not become effective until January 1, 2003, the fifth grant in the sum of $214,700 is not subject to the Act.

If the Attorney General and the University agree that the first four listed grants are federal grants, this Court supports the position of the University that the Attorney General should not be able to investigate these grants for the additional reason noted hereafter. The University in its Brief in Support of Petition at page 7 states: "The Commonwealth admits that the CIDs relate to those grants listed on Dr. Mann's C.V. that contain any reference to the University. *See* Answer paragraphs 3 and 13. But Dr. Mann's C.V. itself shows that the first four grants identified in the CIDs were awarded by federal, not Commonwealth, funds." The CIDs do not state on their face whether or not the first four grants are federal or state funds.

As to the fifth grant of $214,700, the Attorney General noted in his brief at page 15, "if the grant and payment documents requested showed no claims for payment made on the University and no payments made by the University related to the grants after January 1, 2003, that might obviate the need for the remainder of the investigation." The Court is of the opinion that, if the fifth grant was of Commonwealth of Virginia funds and any funds were paid on the grant after January 1, 2003, the Attorney General has the right to investigate if he meets the other requirements of the statute.

### 5. *What Are Funds of the Commonwealth of Virginia?*

The Attorney General argued on August 20, 2010, that funds paid to Dr. Mann by a federal grant and placed into a University of Virginia bank account became funds of the Commonwealth. This Court disagrees. The Attorney General can only investigate funds paid by the Commonwealth for a grant to Dr. Mann.

6. *What Is the Scope of the Inquiry by the Attorney General?*

In the Civil Investigative Demands, the Attorney General asked for production of materials described in the Attachment. In the Attachment Instructions, it is stated "each paragraph of this Civil Investigative Demand (CID) relates to the period from January 1, 1999, through the present date." If the CIDs were allowed to go forward, this request would be limited to correspondence, e-mails, messages, etc. to or from Dr. Mann that relate to any information, materials, or documents contained in the application for the 2001 University of Virginia internal grant and any information, materials, or documents provided by or to Dr. Mann that relates to approval or payment of any funds to him at any time under the grant until it ended.

As to the fifth grant, the 2001 University of Virginia internal grant, the law is clear that FATA did not become effective until January 1, 2003. It is settled law the statute applies only prospectively as the General Assembly did not say expressly that it applied retroactively. Therefore, any investigation has to be into acts of Dr. Mann to obtain state money after January 1, 2003. However, information may be sought as noted above prior to January 1, 2003, as reasonable discovery to evaluate any conduct after January 1, 2003.

## Conclusion

For the reasons stated above, this Court rules that the two CIDs in question do not show a "reason to believe" that the University of Virginia is in possession of materials relevant to a false claims law investigation and have not stated the "nature of the conduct" with sufficiency to satisfy the requirement of the statute. However, the University of Virginia is a proper subject for a CID, and the Attorney General may investigate grants made with Commonwealth of Virginia funds to professors such as Dr. Mann. As noted by the Attorney General in argument to the Court, the University of Virginia is a State institution, and Professor Mann was a state employee allegedly obtaining state funds to conduct his research.

Accordingly, the Court sets aside the CIDs in their entirety without prejudice to the Commonwealth to proceed according to law.